## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-60007 |
| **WINLAND OCEAN SHIPPING** | § | **(Joint Administration Requested)** |
| **CORPORATION,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | Case No. 15-60008 |
| **SKYACE GROUP LTD. (BVI),** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | Case No. 15-60009 |
| **PLENTIMILLION GROUP LTD. (BVI)** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | Case No. 15-60010 |
| **FON TAI SHIPPING CO., LTD. (HK),** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | Case No. 15-60011 |
| **WINLAND DALIAN SHIPPING S.A.** | § | |
| **(PANAMA),** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |
| | § | |
| In re: | § | |
| | § | |
| | § | Case No. 15-60012 |
| **WON LEE SHIPPING CO., LTD. (HK),** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

## DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
## (I) DIRECTING JOINT ADMINISTRATION AND
## (II) WAIVING REQUIREMENTS OF BANKRUPTCY CODE
## SECTION 342(c)(1) AND BANKRUPTCY RULES 1015 AND 2002(n)

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**THERE WILL BE A HEARING ON THIS MOTION ON FRIDAY, FEBRUARY 13, 2014 AT 2:30 P.M. (CDT) BEFORE THE HONORABLE JUDGE DAVID R. JONES IN THE UNITED STATES DISTRICT COURTHOUSE, 515 RUSK, COURTROOM 400, HOUSTON, TEXAS 77002. TO APPEAR TELEPHONICALLY, PARTIES SHOULD CONSULT THE COURT'S PROCEDURES LOCATED ON THE COURT'S WEBSITE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Winland Ocean Shipping Corporation ("Winland"), SkyAce Group Limited (BVI) ("SkyAce"), Plentimillion Group Limited (BVI) ("Plentimillion"), Fon Tai Shipping Co. Ltd. (HK) ("Fon Tai"), Winland Dalian Shipping S.A. (Panama) ("Winland Dalian"), and Won Lee Shipping Co. Ltd. (HK) ("Won Lee," and together with Winland, SkyAce, Plentimillion, Fon Tai and Winland Dalian, collectively, the "Debtors"), by and through their undersigned proposed attorneys, hereby file this Emergency Motion for Entry of an Order (I) Directing Joint Administration and (II) Waiving Requirements of Bankruptcy Code Section 342(c)(1) and Bankruptcy Rules 1015 and 2002(n) (the "Motion"). In support thereof, the Debtors state as follows:

## I.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicate for the relief requested in this Motion is Bankruptcy Rule 1015(b) and Local Rule 1015-1.

## II.   BACKGROUND

### A.   <u>Events Leading to Bankruptcy Filing</u>

2.      On February 12, 2015 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas, Victoria Division (the "<u>Court</u>").  Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtors are operating their businesses and managing their property as debtors in possession.  No trustees or examiners have been appointed in these cases.

3.      The Debtors are engaged in the business of international ocean transportation of bulk cargo.  At the height of their operations in 2011 and 2012, the Debtors had an ocean shipping fleet of 11 vessels, with a self-owned carrying capacity of over 240,000 tons; through monthly voyage charters and time charters, the Debtors provided service to major ports around the world.

4.      The business was founded as a chartering business in 1993 by Li Honglin ("<u>Li</u>") and his wife, Xue Yinghe ("<u>Xue</u>").  At the time, the market in China was dominated by State-owned enterprises and the level of service was generally not satisfying to customers.  As a privately owned business, Li and Xue made effective use of their advantages in service and price to build relationships with a large number of corporate customers.  Through a gradual accumulation of capital and experience, as well as a grasp of market trends, the company leased

its first vessel in 1995.   In 1997, following the outbreak of the Southeast Asian financial crisis, the global shipping market experienced a downturn.   With an optimistic view of market prospects and stable customer base, the Debtors seized the opportunity to lease more vessels at a lower price, becoming a ship owner by the direct purchase of vessels in 1998.   Between 2000 and 2005, the Debtors purchased a total of 13 vessels. The Company purchased one in 2009, and constructed two new vessels in 2010 (one delivered in January 2011 and the other delivered in May 2011).

5.      The Debtors and other subsidiaries generated revenue of $85.6 million and net income of $19.1 million in 2008. With the global economic crisis and shipping market downturn since late 2008, operating revenues in 2009 dropped to $50.2 million producing a net loss of $7.0 million. Operating revenues and net income improved in 2010 to $74.3 million and $3.1 million, respectively. For the fiscal year ended December 31, 2011, operating revenues and net income were $60.8 million and $3.1 million, respectively.

6.      Operating revenues and net income took a turn downward for the fiscal years 2012 through 2014.  The fiscal year ending December 31, 2012, had operating revenue of $56.4 million and a net loss of $7.3 million  The fiscal year ending December 31, 2013 had operating revenue of $35.1 million and a net loss of $2.9 million.  The fiscal year ending December 31, 2014 had operating revenue of $12.6 million and a net loss of $8.0 million.

7.      In 2011, the Debtors and other subsidiaries began selling off vessels in their fleet. In 2013 and 2014, nine vessels were sold ranging in price from approximately $870,000 to $1.8 million.  The profits from these sales were used to settle outstanding secured debt on the vessels as well as trade debt for spare parts, stores, agency fees, and bunker charges.

8.     The shipping industry is highly cyclical, with attendant volatility in charter hire rates and profitability. Following record charter rate levels in 2007 and 2008, charter rates in many sectors of shipping quickly plummeted to decade-low levels as a result of the global recession. As noted above, during the years leading up to the global recession, the Debtors were in the process of initiating an expansion of fleet, which included placing orders with a shipyard for two new vessels.  However, under the pressure of extremely low charter rates for its existing vessels, the Debtors have faced difficulty in servicing their debt and operating expenses.  The recent arrest of two of their vessels and the resulting loss of charter income has exacerbated the situation.

9.     On or about September 9, 2014, the "M.V. Rui Lee" was arrested by Milestone Shipping, S.A. ("Milestone") in Singapore pursuant to a Warrant of Arrest issued in the action *Milestone Shipping, S.A. v. Owner of the Vessel Rui* Lee, Case No. ADM 103/2014 (the "Milestone Action"), in the High Court of the Republic of Singapore.  The Milestone Action includes allegations of breach of contract, breach of duty, negligence and tort claims stemming from the charter of the M.V. Rui Lee from the Persian Gulf to China on or about March 5, 2014 and the carriage of certain iron ore cargo that allegedly resulted in loss, damage, non-delivery and/or delays.

10.    In order to protect its interest, China Merchants Bank Co. Ltd. ("CMB"), intervened in the Milestone Action on September 11, 2014, filing an action in the High Court of the Republic of Singapore. The action was against the Debtor Won Lee, as the owner of the vessel, Case No. ADM 162/2014 (the "CMB Action") for failure to make payments when due on the outstanding loan secured by the M.V. Rui Lee,.  CMB is requesting, among other things, payment of all amounts due under the loan.

11.     In connection with the CMB Action, a hearing regarding a summary judgment motion was scheduled before an assistant registrar on February 12, 2015.   This hearing commenced but was not completed and has been rescheduled for February 27, 2015  A separate hearing regarding an application to sell the M.V. Rui Lee is scheduled before the High Court of the Republic of Singapore on February 17, 2015.  If CMB is successful at the sales application hearing, the vessel will be appraised and posted for sale. As a result of the arrest of the M.V. Rui Lee, for the last several months this vessel has not been able to generate income critical to the Debtors.

12.     On or about December 15, 2014, the "M.V. Winland Dalian" was in the port of Ningde in Fujian Province at Fujian Xinyuan Shipbuilding Co., Ltd. to complete necessary repairs when it was arrested.  The "M.V. Winland Dalian" was arrested pursuant to a Civil Ruling and Arrest Order issued by the Xiamen Maritime Court.  The Applicant of this Arrest Order was Grand Capital International Limited ("GCIL"), which is a BVI-registered company in Taiwan.  GCIL requested the Arrest Order because Winland Dalian could not repay the debt related to its purchase of the "M.V. Winland Dalian."

13.     As a result of the arrest of the M.V. Winland Dalian, it has not been able to generate income critical to the Debtors.  If the repairs on the M.V. Winland Dalian were completed, and the M.V. Wiland Dalian were released, it could immediately begin to generate necessary income.

14.     The arrest of two of the Debtors' three vessels has made the Debtors' financial condition even more precarious and has significantly impaired the Debtors' ability to operate.  If the M.V. Rui Lee could be released and the M.V. Winland Dalian could have its repairs

completed and be released, then these two vessels could immediately begin to earn money for the Debtors, which would improve their financial condition to the benefit of all creditors.

**B.**     **Need for Joint Administration**

15.     As discussed above, the Debtors are engaged in the business of international ocean transportation and bulk cargo; through monthly voyage charters and time charters, the Debtors provide service to major ports around the world.  The Debtors' fleet now comprises three vessels: "*M. V. Fon Tai*," "*M.V. Rui Lee*" and "*M.V. Winland Dalian*" (collectively, the "Vessels").

16.     Winland is a Texas corporation.  Winland owns 100 percent of SkyAce, which was formed solely for the purpose of acquiring Plentimillion and Best Summit Enterprise Limited.

17.     A wholly-owned subsidiary of Winland, SkyAce has no significant business operations other than its 100 percent ownership of Plentimillion. Plentimillion, in turn, owns 100 percent of each of the remaining three debtors: Fon Tai, Winland Dalian and Won Lee.

18.     Fon Tai owns the vessel "M.V. Fon Tai."  Winland Dalian owns the vessel "M.V. Winland Dalian," which was arrested by a Chinese court in December 2014.  Won Lee owns the vessel "M.V. Rui Lee," which was arrested by a Singapore court in September 2014.

### III.   RELIEF REQUESTED

19.     Pursuant to Bankruptcy Rule 1015(b), the Debtors seek joint administration of their chapter 11 cases and implementation of the following procedures:

> a.   One docket shall be maintained for the Debtors' cases under the case number assigned to Winland Ocean Shipping Corporation..
>
> b.   The caption of the cases shall be modified to reflect their joint administration as follows:

| In re: | Chapter 11 |
| --- | --- |
| WINLAND OCEAN SHIPPING CORPORATION, et al., | Case No.: 15-60007 |
| Debtors. | (Jointly Administered) |

c. A notation substantially similar to the following notation shall be entered on the docket for all other Debtors to reflect that each of the Debtors' chapter 11 cases shall be jointly administered under the Winland chapter 11 case:

*An order has been entered in this case directing joint administration of this case solely for procedural purposes with the chapter 11 bankruptcy case of Winland Ocean Shipping Corporation, Case No. [15-60007]. The docket for Winland Ocean Shipping Corporation should be consulted for all matters affecting this case.*

d. The Office of the U.S. Trustee shall conduct joint informal meetings with the Debtors, if one is required, and a joint first meeting of creditors, if required.

e. Each of the Debtors shall file separate Schedules of Assets and Liabilities, Statements of financial Affairs and, as applicable, Lists of Equity Security Holders;

f. Proofs of claim filed by creditors of any Debtor shall reflect the caption and case number of the Debtor to which the claim relates and in whose case such claim is to be filed;

g. Separate claims registers shall be maintained for each Debtor;

h. One plan and disclosure statement may be filed for all of these cases; however, substantive consolidation is not being requested at this time; and

i. The Debtors shall be authorized to file the monthly operating reports required by the United States Trustee on a consolidated basis in a format acceptable to the U.S. Trustee.

## IV.   BASIS FOR RELIEF

20. Federal Rule of Bankruptcy Procedure 1015 authorizes this Court to order the joint administration of the bankruptcy cases of a debtor and its affiliates. FED. R. BANKR. P. 1015(b) ("If a joint petition or two or more petitions are pending in the same court by … (4) a

debtor and an affiliate, the court may order a joint administration of the estates"). Each of the above-captioned Debtors is an affiliate of the Winland Ocean Shipping Corporation. *See* 11 U.S.C. § 101(2); *see also* Declaration of Robert E. Ogle, Winland's chief restructuring officer.[1] [2] Accordingly, the Court is authorized to grant the relief requested in this Motion.

21.     Joint administration of these cases will save considerable time and expense for the Debtors, their estates and creditors, the United States Trustee and this Court. The Debtors anticipate that, during the course of these cases, it will be necessary to file numerous motions and applications, as well as other pleadings and documents seeking relief on behalf of all Debtors. The Debtors respectfully submit that joint administration of their chapter 11 cases is in the best interests of their estates, creditors, and other parties-in-interest and will further the interests of judicial economy and administrative expediency by, among other things, obviating the need to: (i) file duplicate motions, (ii) enter duplicate orders and (iii) forward unnecessary, duplicate notices and other documents to creditors and other parties-in-interest, which actions would cause the Debtors' estates to incur unnecessary costs and expenses.

22.     The creditors will not be adversely affected by the joint administration of these cases. The Debtors are not seeking substantive consolidation. Each creditor will be required to file a claim against the respective estate(s) against which it asserts a claim. As such, each estate's assets will be subject to only the claims of the creditors of that estate. Moreover, as set for the above, separate claims registers will be maintained.

23.     Finally, omitting the Debtors' tax identification numbers and addresses from pleading captions is purely procedural and will not affect any party's rights as this information is

---

[1] The Declaration of Robert E. Ogle, Winland's chief restructuring officer, is being filed contemporaneously with the instant pleading in the above-captioned case(s).

[2] Section 302 of the Bankruptcy Code further contemplates the joint administration of affiliated cases.

available already on the Debtors' individual chapter 11 petitions.[3]  Further, since most of the Debtors' creditors are not U.S. entities, it is unlikely that many of them would even recognize a tax identification number, if given one.

## V.   NOTICE

24.     Notice of this Motion has been or will be provided by overnight delivery and/or email and/or facsimile to (a) the Office of the United States Trustee for the Southern District of Texas, (b) all known or alleged secured creditors, (c) the 30 largest non-insider creditors of the Debtors (on a consolidated basis), (d) all known shareholders holding more than 5% of a class of equity interests in any of the Debtors, (e) all Debtor professionals, (f) the Internal Revenue Service, (g) any persons who have filed a request for notice pursuant to Bankruptcy Rule 2002, and (h) any such other government agencies to the extent required by the Bankruptcy Rules and Local Rules.  The Debtors submit that no further notice of this Motion is required.

## VI.   EMERGENCY CONSIDERATION REQUESTED

25.     Emergency relief is requested because, as noted above, the longer the cases are administered individually, the greater the drain on the time and money of the Court, the Debtors, the estate, the creditors and all other parties-in-interest.  As such, it is in the best interest of the estate, *inter alia,* for the relief requested herein to be considered on an emergency basis.

---

[3] In fact, only Winland has a U.S. tax identification number.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) Directing Joint Administration and (ii) Waiving Requirements of Bankruptcy Code Section 342(c)(1) and Bankruptcy Rules 1015 and 2002(n), and for such other and further relief as may be just and proper.

Respectfully submitted on the 12[h] day of February, 2015.

**OKIN & ADAMS LLP**

By: _____/s/ Matthew S. Okin_____
Matthew S. Okin
Texas Bar No. 00784695
Email: mokin@okinadams.com
George Y. Niño
Texas Bar No. 00786456
Email: gnino@okinadams.com
Ruth E. Piller
Texas  Bar No. 00794461
Email: rpiller@okinadams.com
1113 Vine St. Suite 201
Houston, TX  77002
Tel: (713) 228-4100
Fax: (888) 865-2118

**PROPOSED ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF ACCURACY PURSUANT TO LOCAL RULE 9013**

I hereby certify that the information contained in the foregoing Motion is true and correct to the best of my knowledge.

By: _____/s/ Matthew S. Okin_____
Matthew S. Okin