

ENTERED
02/19/2015

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-60007 |
| WINLAND OCEAN SHIPPING | § | (Jointly Administered) |
| CORPORATION, et al., | § | |
| | § | Chapter 11 |
| Debtors. | § | |

**INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL OF EXISTING SECURED LENDERS PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL**

The Court has considered the Emergency Motion Pursuant to Bankruptcy Code §§ 105, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, for an Order (i) authorizing use of cash collateral of existing secured lenders pursuant to Section 363(c) of the Bankruptcy Code, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing on the motion (the "Motion")[1] pursuant to Bankruptcy Rule 4001 as to use of cash collateral filed by the above-referenced debtors and debtors in possession (collectively, the "Debtors").

### Findings of Fact and Conclusions of Law

Having considered the Motion, evidence proffered or presented, and arguments of counsel, the Court hereby finds and concludes as follows:

**Jurisdiction**

A.   This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334. Consideration of the Cash Collateral Motion constitutes a

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (G), (K), (M) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**Notice**

B.     Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitute due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the local rules of this Court.

**Factual Background**

C.     On February 12, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

D.     To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

E.     The Debtors are continuing in the management and operation of their businesses and properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

**Limited Use of Cash Collateral**

F.     The Debtors require the use of the Cash Collateral of CMB in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates. The Debtors are permitted to use the Cash Collateral, on an interim basis, on the terms and conditions provided for herein, commencing on the Petition Date and expiring 24 hours after the conclusion of the Final Hearing (the "Interim Period"). The Debtors shall not make use of Cash

Collateral except in accordance with the terms and conditions contained in this Interim Cash Collateral Order.

G. The Debtors are permitted to use the Cash Collateral solely for such purposes set forth in the Interim Budget (as defined below) in order to avoid immediate and irreparable harm to the Debtors' bankruptcy estates which will occur if this Interim Cash Collateral Order is not immediately approved.

H. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The Debtors' interim use of Cash Collateral is necessary to preserve the bankruptcy estates, and will avoid immediate and irreparable harm to the Debtors, their bankruptcy estates and assets, prior to the expiration of the period specified herein.

## ORDER

Accordingly, it is therefore **ORDERED** that:

1. The Motion is hereby granted in accordance with the terms of this Interim Order. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled. To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

### Authorization to Use Cash Collateral

2. The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only as provided in strict accordance with the terms and conditions provided in this Interim Cash Collateral Order.

3. The Debtors shall be permitted to use Cash Collateral solely to pay the expenses described in the expenditures contained in the budget attached hereto as **Exhibit A** (as such

budget may be amended, modified or supplemented in accordance with this Interim Cash Collateral Order, the "Interim Budget") for the Interim Period, solely up to the amounts, at the times and for the purposes identified in the Interim Budget. The Debtors shall not, without the prior written consent of CMB, use Cash Collateral with respect to any line item in a single week in the Interim Budget in an amount in excess of the aggregate amount budgeted for such line item for that week; provided, however, that there shall be a permitted variance of 15% in the aggregate for any line item amounts listed in the Interim Budget for a particular week. Line item amounts not used in any week may not be used for another line item but may be used for the same line item in a subsequent week. Notwithstanding the foregoing, for exceptional, unanticipated expenditures that are not contemplated by the Interim Budget, the Debtors and CMB may agree that such expenditures, if approved by CMB in writing, are not credited against the permitted aggregate variance.

4. The Debtors and CMB may extend the Interim Period, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order signed by counsel to the Debtors and counsel to CMB is filed together with a copy of a budget if there are changes from the Interim Budget attached hereto as **Exhibit A**.

5. CMB is entitled, pursuant to section 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash Collateral and the M.V. Fon Tai and M.V. Rui Lee (the "Vessels") for the diminution in value of such interests, if any, from and after the Petition Date arising from the imposition and enforcement of the automatic stay and the Debtors' use of the Cash Collateral and the Vessels, as the case may be (each such diminution, a "Diminution in Value").

6. CMB is hereby granted the following adequate protection (the "Adequate Protection") effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or CMB of mortgages, security agreements, pledge agreements, or financing statements, or otherwise):

   a. Adequate Protection Liens. To the extent of the Diminution in Value, and subject to the Carve-Out (defined below), CMB shall have valid and perfected additional and replacement security interests in, and liens upon, all of the Debtors' right, title and interest in, to, and under all of the Debtors' now owned and after-acquired assets and property, including cash, and Cash Collateral of the Debtors (whether maintained with CMB or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing (the "Adequate Protection Liens"), but only to the extent and priority that CMB had valid prepetition liens and security interests in such collateral as of the Petition Date (collectively, the "Adequate Protection Collateral"). The priority of any Adequate Protection Liens granted to CMB shall be (a) the same as existed as of the Petition Date; and (b) in addition to all security interest and liens now existing in favor of CMB and not in substitution therefore; and

   b. Adequate Protection Superpriority Claims. To the extent of the Diminution in Value, and subject to the Carve-Out (defined below), CMB is hereby granted, in

addition to claims under section 503(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code against the Debtor that generated the Cash Collateral or owned the Vessel (collectively, the "Adequate Protection Superpriority Claims"). The Adequate Protection Superpriority Claims shall not be payable from the proceeds of any avoidance actions under Chapter 5 of the Bankruptcy Code.

7. The Adequate Protection Liens and Adequate Protection Superpriority Claims shall be valid only to the extent that CMB's prepetition claims and liens are valid. Entry of this Order shall be without prejudice to any and all rights, remedies, claims, causes of action and defenses which the Debtors and CMB may have against each other, all such rights, remedies, claims, causes of action and defenses to same are specifically preserved.

8. As used herein, the term "Carve-Out" shall mean quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court and any unused retainer held by Debtors' professionals. All liens and claims of CMB, irrespective of their nature or priority, shall be subject to the Carve-Out.

9. Nothing herein shall be construed as a finding or conclusion that CMB is or is not in fact adequately protected by the terms of this Order, or limits the rights of CMB to seek at any time new or different adequate protection, or to terminate use of Cash Collateral under this Order or seek to modify or terminate this Order for any reason.

## Other

10. The Debtors shall provide continued maintenance of, and insurance on, the Vessels being used by the Debtors. Each Debtor shall provide satisfactory documentary proof of insurance to CMB if so requested by CMB. Each of the Vessel-owning Debtors shall confirm to

CMB whether its automatic identification system ("AIS") is operational and activated, and shall provide CMB with the Vessel's current location upon written request from CMB. Each of the Vessel-owning Debtors agree that it will deliver its Vessel to a specified port if so ordered by the Court.

11. The failure of CMB to seek relief or otherwise exercise its rights and remedies under this Order, its prepetition loan documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of CMB.

12. The provisions of this order shall be binding upon and shall inure to the benefit of CMB and the Debtors and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for the Debtors or with respect to the Debtors' property).

13. Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

14. This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

## Reservation of Right

15. Nothing in this Order shall prejudice any objections CMB may have to the relief requested at the Final Hearing and all such objections are specifically preserved.

## Final Hearing

16. Pursuant to Bankruptcy Rule 4001, the final hearing (the "Final Hearing") on the Motion shall be held and is hereby scheduled for March 26, 2015, at 2:00 P.M. (Houston time) before this Court. Objections to the requested relief shall be filed with the Court no later than March 20, 2015 at 5:00 P.M. (Houston time) and served upon (i) the Debtors; (ii) the Debtors'

counsel; (ii) the United States Trustee; (iii) CMB; (iv) CMB's counsel; (v) all secured creditors of the Debtors; and (vi) any other party that has filed a notice of appearance in these chapter 11 cases. The Debtors shall promptly mail copies of this Order to each of the parties receiving notice of the Motion, as well as any other entity known to the Debtors that might have an interest in the Cash Collateral and any other party that has filed and served a special request for notice with this Court.

**SIGNED: February 19, 2015.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Winland Ocean Shipping Corp. (Texas)
### Assume Only One Ship ("Fon Tai") is Operating
Projected Cash Receipts and Disbursements for the period February 8, 2015 through May 10, 2015

| | WEEK 1 | WEEK 2 | WEEK 3 | WEEK 4 | WEEK 5 | WEEK 6 | WEEK 7 | WEEK 8 | WEEK 9 | WEEK 10 | WEEK 11 | WEEK 12 | WEEK 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Ending | 2/15 | 2/22 | 3/1 | 3/8 | 3/15 | 3/22 | 3/29 | 4/5 | 4/12 | 4/19 | 4/26 | 5/3 | 5/10 | |
| **Cash Receipts:** | | | | | | | | | | | | | | |
| [A] Sales/cash receipts | | $90,000 | | $90,000 | | $105,000 | | $105,000 | | $120,000 | | $120,000 | | $630,000 |
| Sales tax | | | | | | | | | | | | | | |
| **Net sales** | $0 | $90,000 | $0 | $90,000 | $0 | $105,000 | $0 | $105,000 | $0 | $120,000 | $0 | $120,000 | $0 | $630,000 |
| **Gross profit** | $0 | $90,000 | $0 | $90,000 | $0 | $105,000 | $0 | $105,000 | $0 | $120,000 | $0 | $120,000 | $0 | $630,000 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Salary of Company's Staff | | $65,000 | | | | $65,000 | | | | $65,000 | | | | $195,000 |
| Rent, Office, Communication, Business Trips | | $30,000 | | | | $30,000 | | | | $30,000 | | | | $90,000 |
| [B] Management Company Fees: | | | | | | | | | | | | | | $0 |
| Spare Parts | | | | $7,000 | | | | $7,000 | | | | $7,000 | | $21,000 |
| Stores & Supplies | | | | $6,500 | | | | $6,500 | | | | $6,500 | | $19,500 |
| Repairs & Maintenance | | | | $1,200 | | | | $1,200 | | | | $1,200 | | $3,600 |
| Docking Expenses | | | | $0 | | | | $0 | | | | $0 | | $0 |
| Survey | | | | $1,583 | | | | $1,583 | | | | $1,583 | | $4,750 |
| Communication & Equip Repairs | | | | $1,000 | | | | $1,000 | | | | $1,000 | | $3,000 |
| Lubricating Oil Charges[C] | | | | $0 | | | | $14,000 | | | | $14,000 | | $28,000 |
| Chart/Publication | | | | $450 | | | | $450 | | | | $450 | | $1,350 |
| ISM/ISPS Audit | | | | $0 | | | | $0 | | | | $0 | | $0 |
| Crew Department | | | | $46,000 | | | | $46,000 | | | | $46,000 | | $138,000 |
| Management Fee | | | | $5,000 | | | | $5,000 | | | | $5,000 | | $15,000 |
| Commercial and Insurance Department | | | | $12,900 | | | | $12,900 | | | | $12,900 | | $38,700 |
| **Total Operating Expenses** | $0 | $95,000 | $0 | $81,633 | $0 | $95,000 | $0 | $95,633 | $0 | $95,000 | $0 | $95,633 | $0 | $557,900 |
| **Reorganization Expenses** | | | | | | | | | | | | | | |
| Professional Fees | $0 | | | | | | | | | | | | | $0 |
| US Trustee Fees | $0 | | | | | | | $1,000 | | | | | | $1,000 |
| Other Restructuring Expenses | | | | | | | | | | | | | | |
| Critical Vendors | $10,000 | | | | | | | | | | | | | $10,000 |
| **Total Reorganization Expense** | $10,000 | $0 | $0 | $0 | $0 | $0 | $0 | $1,000 | $0 | $0 | $0 | $0 | $0 | $11,000 |
| **Change in cash** | ($10,000) | ($5,000) | $0 | $8,367 | $0 | $10,000 | $0 | $8,367 | $0 | $25,000 | $0 | $24,367 | $0 | $61,100 |
| Beginning Cash | $20,000 | $10,000 | $5,000 | $5,000 | $13,367 | $13,367 | $23,367 | $23,367 | $31,733 | $31,733 | $56,733 | $56,733 | $81,100 | $20,000 |
| Change in Cash | ($10,000) | ($5,000) | $0 | $8,367 | $0 | $10,000 | $0 | $8,367 | $0 | $25,000 | $0 | $24,367 | $0 | $61,100 |
| **Ending Cash** | $10,000 | $5,000 | $5,000 | $13,367 | $13,367 | $23,367 | $23,367 | $31,733 | $31,733 | $56,733 | $56,733 | $81,100 | $81,100 | $81,100 |

### Footnotes

A. Projected Cash Receipts: Sales from the company's shipping business are generated by either voyage charters or time charters. For time charters, the company is currently operating under the assumption that MV Fon Tai will only be generating revenue from time charters. The customer pays for all the fuel expenses and port charges. Note that the estimate for the month of February is lower due to the Chinese Spring Festival. Note that the project revenues are based on the following daily time charter rates:

   February: $6,000
   March: $7,000
   April: $8,000
   June: $9,000
   July: $9,000
   August: $9,000

   Monthly cash receipts are calculated based on 30 days multiplied by the daily time charter rate. The customer pays the company every 15 days so payment is received every other week. Note that during the month of February, the rate is lower at $6,000 as workers in the shipping industry all take time off to celebrate the Chinese Spring Festival holiday for about 20 days.

B. Projected Expenses. Operating expenses are estimated by Dalian Well Master Shipping Co (DWMS). DWMS is a company Winland Ocean Shipping has contracted to manage the vessel operations.Winland Ocean Shipping is required to work with a shipping management company in order to operate its vessels. DWMS provides crew personnel, maintenance on vessels, and other expert operational services to ensure smooth vessel operations. DWMS sends Winland Ocean invoices for its operating expenses and also charges a management fee.

C. Per Winland Ocean Shipping management, the Company currently has oil reserves that can cover the lubrication expenses up until the beginning of April 2015.

D. The company is currently in the process of negotiating with the shipyard to pay $40,650 USD to return Winland Dalian back into service.



Exhibit A