## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 15-60007 |
| WINLAND OCEAN SHIPPING | § | (Jointly Administered) |
| CORPORATION, et al., | § | |
| | § | Chapter 11 |
| Debtors. | § | |

## MOTION OF CHINA MERCHANTS BANK CO. LTD. PURSUANT TO 11 U.S.C. § 362(d) FOR ENTRY OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY

**THIS IS A MOTION FOR RELIEF FROM THE AUTOMATIC STAY. IF IT IS GRANTED, THE MOVANT MAY ACT OUTSIDE OF THE BANKRUPTCY PROCESS. IF YOU DO NOT WANT THE STAY LIFTED, IMMEDIATELY CONTACT THE MOVING PARTY TO SETTLE. IF YOU CANNOT SETTLE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY AT LEAST 7 DAYS BEFORE THE HEARING. IF YOU CANNOT SETTLE, YOU MUST ATTEND THE HEARING. EVIDENCE MAY BE OFFERED AT THE HEARING AND THE COURT MAY RULE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**THERE WILL BE A HEARING ON THIS MOTION ON MAY 11, 2015 AT 9:00 A.M. (CDT) BEFORE THE HONORABLE JUDGE DAVID R. JONES IN THE UNITED STATES DISTRICT COURTHOUSE, 515 RUSK, COURTROOM 400, HOUSTON, TEXAS 77002.**

China Merchants Bank Co. Ltd. ("CMB"), secured lender under the CMB Facility (defined below), by and through its undersigned counsel, hereby files this motion for an order, pursuant to 11 U.S.C. § 362(d) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), lifting the automatic stay (the "Motion"). In support of the Motion, CMB respectfully states as follows:

## PRELIMINARY STATEMENT

1.      CMB loaned the Debtors approximately $25 million to purchase two ships—the M.V. Rui Lee and the M.V. Fon Tai (the "CMB Vessels").  CMB has a mortgage on the two ships and a security interest in all of their earnings.  The Debtors defaulted prepetition under the loan agreement by failing to pay CMB.  CMB moves to lift the stay because (i) the Debtors are not adequately protecting and cannot adequately protect CMB's interest in the CMB Vessels, and (ii) the Debtors have no equity in the CMB Vessels and the CMB Vessels are not necessary to an effective reorganization.

2.      The Debtors are not adequately protecting and cannot adequately protect CMB's interests in the CMB Vessels.  The Debtors are not making periodic cash payments and have no means to do so.  Just one of the Debtors' three ships is operating and, according to the Debtors' own projections—which are predicated on a dramatic increase in day rates for dry bulk vessels and may not include necessary costs to preserve and maintain the one operating CMB Vessel— the Debtors will be on the precipice of administrative insolvency by May.  If rates do not recover, the budget will be deeply underwater.  Moreover, the budget assumes <u>no</u> adequate protection payments to CMB and <u>no</u> professionals' fees.  Additionally, it appears that there is little or no equity cushion protecting CMB's interest in the CMB Vessels.  And, each day, as the ships depreciate, CMB's claim continues to grow with interest, fees and costs, including significant costs associated with the arrest of the M.V. Rui Lee in Singapore.  The Debtors do not have unencumbered assets on which to grant CMB replacement liens.

3.      The Debtors purport to have significant second lien debt secured by the CMB Vessels, and there is potential for other secured claims.  It is beyond reasonable dispute that the Debtors have no equity in the CMB Vessels.  The Debtors cannot establish that the CMB Vessels are necessary for an effective reorganization because they cannot show that there is a reasonable

HOU:3538073.1

prospect for a successful reorganization within a reasonable time.  There are no levers under chapter 11, such as the rejection of burdensome contracts, which the Debtors can pull to unlock value for their business.  Rather, the Debtors here are essentially three single-asset debtors (and its parent), and only one asset is generating any revenue.  The Debtors' only reorganization prospect is dependent upon unsubstantiated hope that the market for chartering ships will significantly improve in a very short period of time.  Hoping for a market rebound, however, is not a basis for reorganization and has been consistently rejected by the Fifth Circuit as a sufficient basis to resist a lift stay motion.  The automatic stay should be lifted.

## RELIEF REQUESTED

4.      By this Motion, CMB seeks the entry of an order, substantially in the form annexed hereto as "Exhibit A," lifting the automatic stay to allow  CMB to exercise its rights and remedies under the CMB Facility Agreement (as defined below), security documents and applicable law against the CMB Vessels, the Debtors and other collateral.  The statutory predicate for such relief is 11 U.S.C. § 362(d).

## JURISDICTION

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

6.      On February 12, 2015 (the "Petition Date"), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the management and operation of their business and property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No official committee of unsecured creditors, trustee or examiner has been appointed in these cases.

3

A.     **Secured Debt**

7.     <u>The CMB Collateral Vessels.</u>  Winland Ocean Shipping Corporation, through its debtor subsidiaries Fon Tai Shipping Co. Ltd ("Fon Tai"), Won Lee Shipping Co. Ltd ("Won Lee") and Winland Dalian Shipping S.A. ("Winland Dalian"), owns three vessels engaged in international ocean transportation of bulk cargo.  The following chart is a modified version the Debtors' organizational structure, including non-Debtor parent companies:



8.      Two vessels, the M.V. Rui Lee and the M.V. Fon Tai, are mortgaged to CMB. Debtor Won Lee owns one CMB Vessel, the M.V. Rui Lee.

**M.V. Rui Lee**



Debtor Fon Tai owns the other CMB Vessel, the M.V. Fon Tai.

**M.V. Fon Tai**



9.      <u>CMB Senior Debt.</u>  The Debtors partially financed the acquisition of the CMB Vessels with proceeds of the loan facility under that certain facility agreement (the "CMB Facility Agreement") dated March 26, 2010 among CMB, as lender, Fon Tai and Won Lee as joint and several borrowers (the "Borrowers"), and SkyAce Group Limited as guarantor (as amended or supplemented, the "CMB Facility").  The CMB Facility is a term-loan facility with

HOU:3538073.1

an original commitment amount of up to $37 million. The amount outstanding as of the Petition Date under the CMB Facility was approximately $28 million in principal and accrued interest, fees, costs, expenses and other liabilities and amounts under the CMB Facility (collectively, the "CMB Facility Obligations").

10.     As security for repayment of the CMB Facility Obligations, Fon Tai and Won Lee executed deeds of covenant and Hong Kong ship mortgages granting CMB first priority mortgages on the CMB Vessels and delivered to CMB separate general assignments of charter proceeds, earnings, insurance proceeds and requisition compensation payable in respect of the CMB Vessels. Under these documents, CMB has a first mortgage lien on the CMB Vessels and a security interest in the cash and receivables generated from operation of the CMB Vessels. In addition, debtor Plentimillion Group Limited, the holding company that owns the equity in the ship-owning Debtors, granted CMB a lien on the equity it owns in Fon Tai and Won Lee.

11.     Attached collectively as "Exhibit B" are copies of the CMB Facility Agreement and related security documents. Upon information and belief, these documents are in the Debtors' possession. Counsel for CMB has also provided copies to the Debtors' U.S. counsel.

12.     Junior Debt. By separate mortgages, Won Lee and Fon Tai also granted second mortgages on the CMB Vessels to China CITIC Bank Co. Ltd. ("CITIC") to secure a credit line of up to $15 million issued by CITIC to the Debtors.[1] The amount outstanding on the second lien debt as of the Petition Date was approximately $19.6 million.

13.     The Other Vessel. The Debtors also own a third vessel—the M.V. Winland Dalian. CMB does not have a lien on the M.V. Winland Dalian, and this Motion seeks no relief against the M.V. Winland Dalian.

---

[1]     CMB reserves all rights to challenge the validity and extent of such liens.

**B.    Event Of Default And Proposed Sale**

14.    On June 21, 2014, the Borrowers failed to make a payment in the amount of $989,584.20 due to CMB under the CMB Facility.  On or about July 4, 2014, CMB sent a notice of default to the Borrowers, declaring the entirety of the CMB Facility Obligations to be immediately due and payable.  On or about July 14, 2014, CMB sent a second notice of default to the Borrowers, which repeated the contents of the previous notice of default sent on or about July 4, 2014.

15.    Discussions with Mr. Li Honglin, the ultimate owner of the Borrowers, prior to and after the event of default resulted in a proposed sale of the CMB Vessels.  Specifically, on August 5, 2014, SinoPac Leasing Corporation ("SinoPac") offered to purchase the CMB Vessels for $28 million in the aggregate.  On August 27, 2014, SinoPac informed CMB that it would not proceed with the proposed sale.

**C.    Prepetition Vessel Arrests**

16.    The M.V. Rui Lee and M.V. Winland Dalian were arrested prepetition.  Arrest of a vessel is the physical process of taking control of a vessel in order for lienholders to request that the vessel be sold in satisfaction of the liens in a maritime foreclosure court.  Thus, the M.V. Fon Tai is the Debtors' only operating vessel.

17.    On or about September 9, 2014, charterer Milestone Shipping S.A. ("Milestone") arrested the M.V. Rui Lee pursuant to a warrant of arrest issued by the High Court of the Republic of Singapore.  Milestone alleged breach of contract, breach of duty, negligence and tort claims stemming from the carriage of certain cargo that allegedly resulted in loss, damage, non-delivery and/or delays.  Milestone's claim was alleged to be $1,346,867.  On October 27, 2014, Milestone released the M.V. Rui Lee from arrest.  Milestone, however, continues to maintain its

claim against the M.V. Rui Lee for its alleged losses and in respect of arrest costs prior to the release.

18.     In order to protect its security interest, CMB arrested the M.V. Rui Lee hours after it was released by Milestone.  CMB asserted claims against Won Lee for failure to make payments when due on the CMB Facility Obligations, demanded payment of all CMB Facility Obligations and requested appraisal and sale of the M.V. Rui Lee.  The foreclosure action in respect of the M.V. Rui Lee has been suspended in compliance with the automatic stay resulting from the filing of these cases under chapter 11.  A pre-trial conference is presently scheduled for April 2, 2015 for the parties to update the Singapore court on the status of the chapter 11 proceedings, though parties may request an earlier date.

HOU:3538073.1

### D.   CMB Claim Amount

19.   As of the Petition Date, the total amount required to satisfy CMB's mortgage debt, including principal, interest, fees, and legal and other costs associated with arrest, was approximately $28 million.  Such amounts include but are not limited to the following:

| | |
|---|---:|
| Principal | $25,725,000 |
| Accrued interest | $683,956.68 |
| Handling fees pursuant to section 11 of the CMB Facility Agreement | $406,102.12 |
| Costs in maintaining the M.V. Rui Lee under arrest in Singapore[2] | $840,520.17 |
| Legal fees in connection with the arrest of the M.V. Rui Lee[3] | $382,095.45 |
| Total | $28,037,674 |

20.   Moreover, arrest costs continue to accrue at approximately $131,325 per month. In particular, there are continuing port dues, security guard charges, costs for the replacement skeleton crew (estimated to be $40,000 per month), port risk insurance premiums, and ship agent's fees associated with the arrest and foreclosure.  Furthermore, CMB continues to accrue legal fees and expenses in connection with these chapter 11 proceedings and the arrest proceeding.  Once these continuing costs of arrest are paid by CMB, pursuant to the CMB Facility, all of these amounts are to be added to the postpetition obligations under the CMB Facility Agreement.

---

[2]     As is typical in maritime arrest proceedings, the arresting creditor is liable for the costs associated with the arrest under Singapore law.  A breakdown of arrest costs is set forth on Schedule 1 hereto.  Pursuant to sections 16.3 and 16.4 of the CMB Facility Agreement, these amounts are added to the CMB Facility Obligations.

[3]     A breakdown of arrest legal fees is set forth on Schedule 2 hereto.

HOU:3538073.1

E.  **Operations And Values**

21.     The Debtors currently have only one vessel—the M.V. Fon Tai (the other vessel that is CMB's collateral)—in operation.[4]  According to the Debtors' revised 13-week budget, the M.V. Fon Tai is projected to generate only $493,265 in gross revenue through May 31, 2015.  This projection relies on the assumption that charter rates will increase by approximately 31 percent (31%) during the budget period.  At the same time, total operating expenses for all Debtors will be $336,302, prepetition expenses will be $234,963,[5] and reorganization expenses will be $1,000.   Including the $88,732 cash on hand as of the March 8, 2015, the Debtors will only have $9,733 in cash as of May 31, 2015.  Notably, operating expenses were reduced by approximately $220,000 since the initial budget [Docket No. 220-1], including reductions in spare parts, repairs and maintenance, communication and equipment repairs, and lubricating oil charges, which raise serious questions about the Debtors' ability and willingness to maintain the operating vessel.

22.     The Debtors received an offer to purchase the CMB Vessels for $28 million over eight months ago.  The offer was withdrawn by the prospective purchaser, presumably because it determined that the CMB Vessels were not worth the agreed-upon price.  CMB's claims now exceed that amount.

23.     Moreover, the value of the CMB Vessels has undoubtedly declined since the offer was withdrawn.  The CMB Vessels are depreciating assets with a well-recognized limited useful

---

[4]     On or about December 15, 2014, secured creditor Grand Cayman International Limited ("GCIL") arrested the M.V. Winland Dalian while in port for necessary repairs.  GCIL requested the arrest order because Winland Dalian could not repay the debt related to its purchase of the M.V. Winland Dalian from GCIL.  Prior to its arrest, the M.V. Winland Dalian is believed to have ceased trading and/or have been in the repair yard for approximately one year.

[5]     Prepetition expenses include crew and engineer wage claims.  Pursuant to the *Emergency Order (I) Authorizing the Debtors to Pay Pre-Petition Engineer Claims; (II) Modifying the Interim Cash Collateral Order; and (III) Scheduling a Final Hearing* [Docket No. 40] (the "Emergency Order"), the Court authorized the Debtors to pay prepetiton engineer wage claims in the amount of $95,742.

life.  According to Clarkson Shipping Intelligence Weekly dated January 16, 2015, the overall market for second hand bulk carriers has declined over the last 12 months.  Accordingly, it is also likely that the value of the CMB Vessels will continue to decline over time due to the nature of the asset, the passage of time and market conditions for bulk carriers.  CMB should not have to bear the risk associated with further depreciation.

## ARGUMENT AND AUTHORITY

24.     The automatic stay should be lifted pursuant to section 362(d) of the Bankruptcy Code so that CMB may exercise its rights and remedies under the CMB Facility Agreement and security documents and applicable law against the CMB Vessels, the Debtors and other collateral.  CMB moves to lift the stay under both sections 362(d)(1) and (d)(2) of the Bankruptcy Code because (i) the Debtors are not adequately protecting and cannot adequately protect CMB's interest in the CMB Vessels, and (ii) the Debtors have no equity in the CMB Vessels and the CMB Vessels are not necessary to an effective reorganization.  *See* 11 U.S.C. § 362(d)(1) and (d)(2).

### A.     The Stay Should Be Lifted For Lack Of Adequate Protection

25.     Section 362(d)(1) of the Bankruptcy Code, provides that "[o]n request of a party in interest and after notice and a hearing, the Court shall grant relief from the stay . . . (1) for cause, including the lack of adequate protection of an interest in property of such party in interest."  The Debtors bear the burden of proof with respect to demonstrating that CMB is adequately protected.  *See* 11 U.S.C. § 362(g)(2). The stay here should be lifted because the Debtors cannot carry such burden.

26.     The aggregate amount of CMB Facility Obligations as of the Petition Date was approximately $28 million in principal and accrued interest, fees, costs, expenses and other liabilities and amounts under the CMB Facility.  Such additional costs include amounts

11

associated with the arrest of the M.V. Rui Lee and with these chapter 11 cases which, pursuant to the CMB Facility Agreement, are to be added to the Debtors' secured obligations to CMB.  *See* CMB Facility Agreement § 16.3 ("The Borrowers shall . . . pay to [CMB] the amount of all costs and expenses (including legal fees) incurred by [CMB] in connection with the enforcement or preservation of any rights under [the CMB Facility Agreement and related security documents]."); *id.* at § 16.4 ("The Borrowers shall . . . pay to [CMB] the amount of all costs and expenses (including legal fees) reasonably incurred by [CMB] in connection with the administration or release of any [s]ecurity under any [s]ecurity [d]ocument.").  The Debtors have not proffered any valuation evidence, and it is apparent that there is insufficient, if any, equity in the CMB Vessels to provide adequate protection against further depreciation.

27.    The Debtors have not taken any steps to adequately protect CMB's interest, such as by making periodic cash payments, and they are unable to do so.  Just one of the Debtors' ships, the M.V. Fon Tai, is operating.  According to the Debtors' own projections, the M.V. Fon Tai will barely generate enough cash to cover basic operating and reorganization expenses.

28.    The projected cash balance of the Debtors after 13 weeks of operating in bankruptcy is a mere $9,733, including $88,732 cash on hand as of the March 8, 2015.  This figure does not include any debt service to CMB, which accrues at a quarterly rate of $925,000.  Nor does the budget contemplate postpetition fees and expenses of estate professionals or costs incurred by CMB, which are added to the secured obligations.

29.    In addition, the cost of the arrest of the M.V. Rui Lee continues to accrue, and such costs will have to be paid by CMB.  Thus, each day the Debtors operate in bankruptcy, their secured obligations to CMB grow and any equity in the CMB Vessels diminishes.

HOU:3538073.1

30.     The CMB Vessels are undoubtedly worth less than they were in August 2014—approximately eight months ago—when a prospective purchaser offered to purchase them for $28 million.   That sale process was terminated by the purchaser.   Since that time, as acknowledged by Clarkson Shipping Intelligence Weekly, a leading publication on shipping markets, the market for second hand bulk carriers has continued to deteriorate.  And, the CMB Vessels continue to depreciate as their useful life winds down

31.     Accordingly, there is insufficient equity value in the CMB Vessels to adequately protect CMB.  To the extent that the Debtors attempt to show that CMB is adequately protected by the value of its collateral, the Bankruptcy Code requires the Debtors to show that there is a substantial equity cushion over and above the amount of the liens.  *In re Las Torres Dev. LLC*, 413 B.R. 687, 697 (Bankr. S.D. Tex. 2009) (collecting cases and using 20% as a benchmark in a case involving real estate).   Here, the Debtors cannot show any equity cushion, let alone a cushion that protects CMB.

32.     The Debtors also do not have any unencumbered assets on which they could provide replacement liens to adequately protect CMB.  Each of their three ships has substantial liens on them that well-exceed their secured obligations to CMB.

33.     The Motion should be granted under section 362(d)(1) because CMB's interest in the CMB Vessels is not being (and cannot be) adequately protected.  *See In re Conquest Offshore Int'l, Inc.*, 73 B.R. 171, 177 (Bankr. S.D. Miss. 1986) (granting lift stay where there was no equity cushion in ships in a distressed shipping market); *In re Pac. Tuna Corp.*, 48 B.R. 74, 78 (Bankr. W.D. Tex. 1985) (lifting stay on fishing vessels where the debtor could not prove the existence of an equity cushion and noting the depressed tuna fishing industry).

13

**B.     The Debtors Lack Equity In The CMB Vessels And Reorganization Is
Impossible**

34.     Section 362(d)(2) of the Bankruptcy Code, which provides an alternative bases

for lifting the automatic stay, states in relevant part:

> On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying or conditioning such
> stay -- . . . (2) with respect to a stay of an act against property under
> subsection (a) of this section, if --
>
>> (A) the debtor does not have an equity in such property; and
>
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).  These elements are met here.

35.     A secured creditor seeking relief from the automatic stay under section 362(d)(2)

bears the burden of proof with respect to only a single issue—the lack of equity in the collateral.

*See* 11 U.S.C. § 362(g)(1).  For purposes of section 362(d)(2)(A), "equity" is defined as "the

difference between the value of the subject property and the encumbrances against it."  *Sutton v.

Bank One, Tex., Nat'l Ass'n (In re Sutton)*, 904 F.2d 327, 329 (5th Cir. 1990).   This includes all

of the liens against the property.  *See In re Woodbranch Energy Plaza One, Ltd.*, 44 B.R. 733,

736 (Bankr. S.D. Tex. 1984) ("[W]hen considering whether the debtor has equity in the property

. . . all debt encumbering the property should be considered.").

36.     The Debtors have no equity in the CMB Vessels.  In total, there are first and

second liens on the CMB Vessels in the amount of approximately $47.6 million.  Once the

debtor's lack of equity in the property is established, the burden shifts to the debtor on the

remaining issue under section 362(d)(2)—whether the property is necessary for an effective

reorganization.  *See* 11 U.S.C. § 362(g)(2); *United Sav. Ass'n of Tex. v. Timbers of Inwood

Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd.),* 808 F.2d 363, 375-76 (5th

Cir. 1987), *aff'd*, 108 S. Ct. 626 (1988); *Canal Place Ltd. P'ship v. Aetna Life Ins. Co. (In re Canal Place Ltd. P'ship)*, 921 F.2d 569, 576 (5th Cir. 1991).  Where a debtor fails to establish a reasonable prospect for a successful reorganization, relief from the stay is appropriate. *See id.* at 577.

37.      To establish that the CMB Vessels are necessary for an effective reorganization, the vessel-owning Debtors must demonstrate that the CMB Vessels are "essential for an effective reorganization *that is in prospect*."  *U.S. Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original).  More specifically, the Debtors must be able to show a reasonable prospect for a successful reorganization within a reasonable time. *Canal Place Ltd. P'ship*, 921 F.2d at 577.  Significantly, "[t]he mere indispensability of the property to the debtor's survival and the debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible."  *United Sav. Ass'n of Tex.*, 808 F.2d at 370-71; *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 673  n.7 (11th Cir. 1984); *In re WGMJR Conquest Offshore Int'l, Inc.*, 435 B.R. 423, 432 (Bankr. S.D. Tex. 2010) ("The debtor must do more than manifest unsubstantiated hopes for a successful reorganization.") (citation omitted).

38.      Here, the CMB Vessels are not necessary for reorganization because no reorganization is possible. Fon Tai, Won Lee, and Winland Dalian are each single-asset Debtors. Each owns one revenue-generating vessel.  They are not seeking to shed burdensome or under-market contracts that are hampering their performance.   There are no additional business operations by any of the Debtors that generate revenue that would permit a successful restructuring.  In short, unlike a typical chapter 11 case, there is no value to be unlocked through the chapter 11 process.  The Debtors are just hoping that during the case the rates paid for

15

shipping rebound.  The Fifth Circuit has explicitly found that such hopes are an insufficient ground to avoid the lifting of the stay.  *See Canal Place Ltd. P'ship*, 921 F.2d at 577 (debtor failed to establish reasonable prospect for successful reorganization where implicit objective of proposed plan was to delay foreclosure and wait for favorable market conditions; undersecured creditors were entitled to relief from stay); *In re Sutton*, 904 F.2d at 331 (concluding the debtor cannot file bankruptcy to stop foreclosure and wait for more favorable conditions); *cf. Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture)*, 936 F.2d 814, 815 (5th Cir. 1991) (stating that "mowing the grass and waiting for market conditions to turn" is an insufficient basis to avoid dismissal).

39.     Other foreign shipping chapter 11 cases filed without secured creditor support and without sufficient operating cash or refinancing prospects have all liquidated, but only after massive expense and value destruction suffered by secured creditors.  *See, e.g.*, *In re Baytown Navigation Inc.*, Case No. 11-35926 (Bankr. S.D. Tex.); *In re TMT Procurement Corp.,* Case No. 13-33763 (Bankr. S.D. Tex.); *In re Marco Polo Seatrade B.V.*, Case No. 11-13634 (Bankr. S.D.N.Y.).  These failed cases were filed by those debtors hoping that the shipping market would rebound, and were, like here, essentially ploys by the owners to obtain a free injunction (the automatic stay) and option that equity would one day be in the money.  The Debtors have already sold the bulk of their fleet in the face of brutal market conditions and have only one operating vessel.  These cases are hopeless and should be not allowed to continue while CMB bears all of the risk and suffers continued economic harm.

## C.     CMB Should Be Authorized To Direct The M.V. Fon Tai To A Convenient Port

40.     The M.V. Fon Tai is a large dry bulk carrier currently operating in the Arabian Sea.  To the extent the relief requested herein is granted, the Debtors have little incentive to

return the vessel to a convenient location for CMB.  CMB would thus be forced to prosecute its rights in an inhospitable jurisdiction or incur additional expense to bring the vessel to a preferred jurisdiction.  Courts in this district have recognized that lenders should be able to direct debtors to deliver vessel collateral to a specified port.  *See TMT Procurement Corp.,* Case No. 13-33763 (Bankr. S.D. Tex.) [Docket No. 43].  Such relief is necessary here to avoid the potential game of "keep away" that could otherwise ensue.

## **ACKNOWLEDGMENT OF BLR 4001-1**

41.    Pursuant to section 362(e) of the Bankruptcy Code, CMB waives the right to a hearing on the Motion within 30 days of filing and, pursuant to Bankruptcy Local Rule 4001-1(a)(5), acknowledges that the  automatic termination of the stay under section 362(e) of the Bankruptcy Code does not apply pending the hearing on the Motion.

## **CONCLUSION**

CMB respectfully requests that the Court (I) enter an order pursuant to 11 U.S.C. § 362(d) lifting the automatic stay to allow it to exercise its contractual and legal rights and remedies under the CMB Facility Agreement and security documents and applicable law against the CMB Vessels and any other collateral, (II) direct that the Debtors move the M.V. Fon Tai to a port in accordance with CMB's direction, and (III) grant such other and further relief as is just and proper.

*[Remainder of page left intentionally blank.]*

HOU:3538073.1

Dated:  March 25, 2015         Respectfully submitted,

By: */s/ Timothy A. Davidson II*

ANDREWS KURTH LLP
Timothy A. Davidson II
State Bar No. 24012503
Joseph P. Rovira
State Bar No. 24066008
Andrews Kurth LLP
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200 (Telephone)
(713) 220-4285 (Facsimile)

-and-

WHITE & CASE LLP
Scott Greissman (pro hac vice motion to be filed)
Douglas P. Baumstein (pro hac vice motion to be filed)
Charles R. Koster (pro hac vice motion to be filed)
1155 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 819-8200

*Attorneys for China Merchants Bank Co. Ltd.*

**SCHEDULE 1**

Prepetition costs in maintaining the M.V. Rui Lee under arrest in Singapore include the following:

| | |
|---|---|
| Port dues of Singapore $467,445.00 (converted at the rate of US$1 to Singapore $1.35) | $346,255.56 |
| Guard Charges at Singapore $52,301.60 (converted at the rate of US$1 to Singapore $1.35) | $38,741.93 |
| Total crew wages, costs and expenses | $391,528.96 |
| Port risk insurance | $35,000.00 |
| Ship agent's fees of Singapore $39,141.52 (at the rate of US$1 to Singapore $1.35) | $28,993.72 |
| Total | $840,520.17 |

**SCHEDULE 2**

Prepetition legal fees in connection with the arrest of the M.V. Rui Lee include the following:

| | |
|---|---|
| Fees and expenses of lead counsel Mayer Brown JSM | $202,713.37 |
| Fees and expenses of Allen & Gledhill LLP at Singapore $268,442.50 (converted at the rate of US$1 to Singapore $1.35) | $174,487.63 |
| Fees and expenses of Mr. Clifford Smith for issuing the Supporting Affidavit for Summary Judgment (Hong Kong law) at Hong Kong $38,000 (converted at the rate of US$1 to Hong Kong $7.76) | $4894.45 |
| Total | $382,095.45 |

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that he contacted counsel for the Debtors regarding the relief requested in this Motion, and the Debtors oppose the relief requested.

<u>*/s/ Timothy A. Davidson II*   </u>
Timothy A. Davidson II

HOU:3538073.1