

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

**ENTERED**
**03/26/2015**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 15-60007** |
| **WINLAND OCEAN SHIPPING** | § | **(Jointly Administered)** |
| **CORPORATION, et al.,** | § | |
| | § | **Chapter 11** |
| Debtors. | § | |

**SECOND INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL OF EXISTING SECURED LENDERS PURSUANT TO SECTION 363(C) OF THE BANKRUPTCY CODE; (II) GRANTING ADEQUATE PROTECTION FOR THE USE THEREOF; AND (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL**

Upon consideration of the Emergency Motion Pursuant to Bankruptcy Code §§ 105, 362, and 363 and Bankruptcy Rules 2002, 4001, and 9014, for an Order (i) authorizing use of cash collateral of existing secured lenders pursuant to Section 363(c) of the Bankruptcy Code, (ii) granting adequate protection for the use thereof, and (iii) scheduling a final hearing on the motion [Docket No. 20](the "Motion")[1]; and upon agreement of China Merchants Bank Co., Ltd ("CMB") and the Debtors and after due deliberation and consideration of the evidence proffered or presented and the arguments of counsel, and good cause appearing therefore, the Court hereby finds and concludes as follows:

### Findings of Fact and Conclusions of Law

**Jurisdiction**

A.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (G), (K), (M) and (O). Venue is proper in this district pursuant to 28 U.S.C. § 1409.

**Notice**

B.      Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitute due and sufficient notice thereof and complies with Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the local rules of this Court.

**Factual Background**

C.      On February 12, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

D.      To date, the Office of the United States Trustee (the "U.S. Trustee") has not appointed an official committee of unsecured creditors (the "Committee").

E.      The Debtors are continuing in the management and operation of their businesses and properties as debtors and debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

F.      Winland Ocean Shipping Corporation, through its debtor subsidiaries Fon Tai Shipping Co. Ltd ("Fon Tai"), Won Lee Shipping Co. Ltd ("Won Lee") and Winland Dalian Shipping S.A. ("Winland Dalian"), owns three vessels engaged in international ocean transportation of bulk cargo.  Two vessels, the M.V. Rui Lee, which is owned by Won Lee, and the M.V. Fon Tai, which is owned by Fon Tai are mortgaged to CMB (the "CMB Vessels").  The Debtors partially financed the acquisition of the CMB Vessels with proceeds of the loan facility under that certain facility agreement, dated March 26, 2010 among CMB, as lender, Fon Tai and

HOU:3537460.6

Won Lee as joint and several borrowers (the "Borrowers"), and SkyAce Group Limited as guarantor (as amended or supplemented, the "CMB Facility", and together with any other security, pledge, mortgage, or guaranty agreements and all other documentation executed in connection with any of the foregoing, each as amended, supplemented or otherwise modified as of the Petition Date, the "CMB Loan Documents").

G.      On February 19, 2015, the Court entered the Interim Order (i) Authorizing the Use of Cash Collateral of Existing Secured Lenders Pursuant to Section 363(c) of the Bankruptcy Code; (ii) Granting Adequate Protection for the Use Thereof; and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral [Docket No. 25](the "First Interim Order").

**Debtors' Stipulations**

H.      The Debtors admit, stipulate and agree (the "Debtors' Stipulations") as follows:

- Pursuant to the CMB Loan Documents, the Debtors granted to CMB, to secure its obligations under the CMB Loan Documents (the "Prepetition Loan Obligations"), a first priority security interest in and continuing lien (the "Prepetition Liens") on (i) the CMB Vessels; (ii) any and all charter proceeds, earnings, insurance proceeds and requisition compensation payable in respect of the CMB Vessels; and (iii) the equity in Fon Tai and Won Lee (collectively, the "Prepetition Collateral").

- Except as provided below, as of the Petition Date, the Prepetition Liens (a) are legal, valid, binding, enforceable, non-avoidable and perfected liens, (b) were granted to, or for the benefit of, CMB for fair consideration and reasonably equivalent value, (c) are not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (d) are subject and subordinate only to valid, perfected and unavoidable liens permitted under the CMB Loan Documents or applicable law, to the

HOU:3537460.6

extent such permitted liens are senior to the liens securing the CMB Facility ("Permitted Prior Liens").[2]

- The amount outstanding as of the Petition Date under the CMB Facility is in an amount not less than $25,725,276.72.  For the avoidance of doubt, this stipulated amount does not include any prepetition or postpetition interest, fees, and/or expenses, and CMB reserves the right to later assert a claim for these amounts and any other amounts owing under the CMB Loan Documents, including, but not limited to, sections 16.3 and 16.4 of the CMB Facility.

- For the avoidance of doubt, nothing contained in the Debtors' stipulations shall limit the rights of the Debtors in pending arrest proceeding of the M.V. Rui Lee in Singapore to assert the defenses raised therein, including the defense that CMB agreed to grant a forbearance under the CMB Loan Documents or that CMB agreed not to accelerate the obligations owing under the CMB Loan Documents, and CMB reserves all rights to contest same.

**Limited Use of Cash Collateral**

I.      The Debtors require the use of the Cash Collateral of CMB in order to continue their ordinary course business operations and to maintain the value of their bankruptcy estates. The Debtors are permitted to use the Cash Collateral, on an interim basis, only in strict accordance with the terms and conditions provided for in this second interim order (the "Second Interim Order"), commencing on March 26, 2015 and expiring on the earliest to occur of (i) May 31, 2015 (as may be extended by further order of the Court or written agreement between the Debtors and CMB); (ii) entry of an order granting the motion for relief from the automatic stay filed by CMB [Docket No. 51] (the Lift Stay Motion"); or (iii) the date that the use of Cash Collateral under this Second Interim Order is terminated pursuant to the terms of this Second Interim Order or other order of the Court (the " Second Interim Period").  The Debtors shall not

---

[2] For purposes of this Second Interim Order, Permitted Prior Liens shall include any liens that were valid, senior, enforceable, perfected and non-avoidable under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such liens are actually valid, senior, enforceable, perfected or non-avoidable.

HOU:3537460.6

make use of Cash Collateral except in accordance with the terms and conditions contained in this Second Interim Order.

J.      The Debtors are permitted to use the Cash Collateral solely for such purposes set forth in the Second Interim Budget (as defined below).

K.      Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.

## ORDER

Accordingly, it is therefore **ORDERED** that:

1.      The Motion is hereby granted in accordance with the terms of this Second Interim Order.  Any objections to the Motion with respect to the entry of this Second Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.   To the extent that any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

### Authorization to Use Cash Collateral

2.      The Debtors are hereby authorized, on a limited basis, to use Cash Collateral only as provided in strict accordance with the terms and conditions provided in this Second Interim Order.

3.      The Debtors shall be permitted to use Cash Collateral solely to pay the expenses described in the expenditures contained in the budget attached hereto as **Exhibit A** (as such budget may be amended, modified or supplemented in accordance with this Second Interim Order, the "Second Interim Budget") for the Second Interim Period, solely up to the amounts, at the times and for the purposes identified in the Second Interim Budget.  The Debtors shall not, without the prior written consent of CMB, use Cash Collateral with respect to any line item in a

single week in the Second Interim Budget in an amount in excess of the aggregate amount budgeted for such line item for that week; provided, however, that there shall be a permitted variance of 15% in the aggregate for any line item amounts listed in the Second Interim Budget for a particular week (a "Variance").  Line item amounts not used in any week may not be used for another line item or carried over into a subsequent week but may be used for the same line item in a subsequent week.   Notwithstanding the foregoing, for exceptional, unanticipated expenditures that are not contemplated by the Second Interim Budget, the Debtors and CMB may agree that such expenditures, if approved by CMB in writing, are not credited against the permitted aggregate variance.

      4.     The Debtors and CMB may extend the Second Interim Period, without further notice to creditors or order of this Court, provided that a Stipulation Extending Cash Collateral Order signed by counsel to the Debtors and counsel to CMB and is filed together with a copy of a budget if there are changes from the Second Interim Budget.

      5.     CMB is entitled, pursuant to sections 105, 361, 362, and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Cash Collateral and the CMB Vessels for the diminution in value of such interests, if any, from and after the Petition Date arising from the imposition and enforcement of the automatic stay and the Debtors' use of the Cash Collateral and the Vessels, as the case may be (each such diminution, a "Diminution in Value").

      6.     CMB is hereby granted the following adequate protection (the "Adequate Protection") effective upon the Petition Date and without the necessity of the execution or filing by the Debtors or CMB of mortgages, security agreements, pledge agreements, or financing statements, or otherwise):

            a.   Adequate Protection Liens. To the extent of the Diminution in Value, and subject to the Carve-Out (defined below), CMB shall have valid and perfected additional

and replacement security interests in, and liens upon, all of the Debtors' right, title and interest in, to, and under all of the Debtors' now owned and after-acquired assets and property, including cash, and Cash Collateral of the Debtors (whether maintained with CMB or other financial institutions), any investment of such cash and cash collateral, inventory, accounts receivable, any cause of action (excluding avoidance or other actions arising under chapter 5 of the Bankruptcy Code), and the proceeds thereof (whether recovered by judgment, settlement or otherwise), any right to payment whether arising before or after the Petition Date, and the proceeds, products, rents and profits of all of the foregoing (the "Adequate Protection Liens"), but only to the extent and priority that CMB had valid prepetition liens and security interests in such collateral as of the Petition Date (collectively, the "Adequate Protection Collateral"). The priority of any Adequate Protection Liens granted to CMB shall be (a) the same as existed as of the Petition Date; and (b) in addition to all security interest and liens now existing in favor of CMB and not in substitution therefore;

b. Adequate Protection Superpriority Claims. To the extent of the Diminution in Value, and subject to the Carve-Out (defined below), CMB is hereby granted, in addition to claims under section 503(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code against the Debtor that generated the Cash Collateral or owned the Vessel (collectively, the "Adequate Protection Superpriority Claims"); and

c. Reporting Requirements. During the Second Interim Period, the Debtors shall provide to CMB on each Thursday a comparison of (a) the prior week's actual revenues to the projected revenues for such week; and (b) the prior week's actual expenses to budgeted expenses for such week. The Debtors also agree to provide any other documents relating to the operation of the Vessels within five business days of a written request from CMB.

7.     As used herein, the term "Carve-Out" shall mean quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court and any unused retainer held by Debtors' professionals. All liens and claims of CMB, irrespective of their nature or priority, shall be subject to the Carve-Out.

8.     Nothing herein or contained in any other order shall be construed as a finding or conclusion that CMB is or is not in fact adequately protected by the terms of this Order, or limits the rights of CMB to seek at any time new or different adequate protection, or to terminate use of Cash Collateral under this Order or seek to modify or terminate this Order for any reason.

## Events of Default

9.    Each of the following events shall constitute an event of default (collectively, the

"Events of Default"):

a.    the payment by the Debtors of any expenses other than in accordance with the Second Interim Budget, subject to the Variance, absent written consent from CMB;

b.    the entry of an order by the Court invalidating, disallowing, avoiding, recharacterizing, subordinating, offsetting or limiting in any respect, as applicable, either (A) the legality, enforceability, priority, validity and binding nature of the Prepetition Liens or Adequate Protection Liens securing the Prepetition Loan Obligations or (B) any of the Prepetition Loan Obligations or Super-Priority Claims;

c.    the entry of any order by this Court or any other court having jurisdiction to do so (i) authorizing the sale of all or substantially all of the Debtors' assets, or (ii) authorizing any other sale or disposition of any of the Prepetition Collateral, except sales in the ordinary course of business or sales to dispose of immaterial or obsolete assets;

d.    the registration or flag of any CMB Vessel is cancelled, changed or terminated without the prior written consent of CMB and not restored within 15 days unless such cancellation, change or termination is the result of direct or indirect action taken by CMB;

e.    the incurrence after the Petition Date of indebtedness that is (A) secured by a security interest, mortgage, collateral interest or other lien on all or any portion of the Prepetition Collateral or the Adequate Protection Collateral senior to the liens of CMB or (B) entitled to administrative priority status senior to the liens or claims of CMB (except, in the case of this clause (B) indebtedness incurred in the ordinary course of business with a priority that is junior to the claims granted to CMB), unless any such indebtedness is used to immediately refinance and pay the Prepetition Loan Obligations indefeasibly in full in cash;

f.    the entry of a final order by the Court, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow CMB  to execute upon or enforce a lien on or security interest in any Prepetition Collateral that has a material effect on the Debtor's business;

8

g.   the entry of a final order by the Court, granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code to allow any creditor to execute upon or enforce a lien on or security interest in any Prepetition Collateral that has a material effect on the Debtor's business;

h.   the reversal, vacatur, modification, supplement, extension or amendment (without the express prior written consent of CMB, in its sole discretion) of this Order;

i.   the entry by the Court of an order, or the filing by a Debtor of a motion which seeks entry of an order, (A) dismissing the Case, (B) converting the Case to a case under chapter 7 of the Bankruptcy Code or (C) appointing a trustee or examiner with the expanded powers to operate a Debtor's business pursuant to section 1104 of the Bankruptcy Code (without CMB's consent);

j.   the Debtor's failure to remain current on any postpetition obligation related to the operation of the M.V. Fon Tai, including its obligation to pay crew members, or failure to pay any ordinary course or trade payables in accordance with the Second Interim Budget;

k.   failure to comply with the Reporting Requirements set forth in this Second Interim Order; or

l.   any breach by the Debtor of any of the obligations, representations, warranties or covenants set forth in this Order, which breach is not cured on or within three (3) business days after giving of written notice of such breach to the Debtor, if applicable, on or within the cure period, if any, provided for under this Order.

10.   If an Event of Default occurs, notice of which has been provided to the Debtors by CMB, the Debtors' ability to use Cash Collateral shall automatically terminate for all purposes at the end of the third (3rd) business day (the "Default Notice Period") following the giving of notice of such Event of Default (the "Termination Notice"), unless the Debtor has, prior to the expiration of the Default Notice Period, cured such Event of Default; provided, however, that during the Default Notice Period, (a) any Cash Collateral, including proceeds of Adequate Protection Collateral shall only be used in accordance with the Approved Budget; and (b) the Debtor is only permitted to utilize Cash Collateral in conformance with the expense line items in the Approved Budget (subject only to the Variance).

HOU:3537460.6

11.     Upon an Event of Default, the Debtors shall be entitled to an emergency hearing before the Court to seek a declaration that an Event of Default has not occurred or seek alternative uses of Cash Collateral.

## Miscellaneous

12.     The Debtors shall provide continued maintenance of, and insurance on, the Vessels being used by the Debtors.  Each Debtor shall provide satisfactory documentary proof of insurance to CMB if so requested by CMB.  Each of the Vessel-owning Debtors shall insure that its automatic identification system ("AIS") is operational and activated, and shall provide CMB with the Vessel's current location upon written request by CMB.  Each of the Vessel-owning Debtors agree that it will deliver its Vessel to a specified port if so ordered by this court.

13.     The failure of CMB to seek relief or otherwise exercise its rights and remedies under this Second Interim Order, the First Interim Order, the CMB Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of CMB.  Except as expressly provided herein, nothing contained in this Second Interim Order (including, without limitation, the authorization of the use of any Prepetition Collateral, including, without limitation, Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to CMB, to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of the Debtors to contest such assertion).  The entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, the ability of the CMB under the Bankruptcy Code or non-bankruptcy law to (i) request conversion of the Cases to cases under chapter 7, dismissal of the Cases, or the appointment of a trustee in the Cases, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to the

Debtors, or (iii) exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) of CMB.

14.    The provisions of this Second Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, CMB, any statutory committee and the Debtors and its respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary or responsible person appointed as a legal representative of the Debtors or with respect to the property of the estate of the Debtors), whether in the Cases, in any successor cases, or upon dismissal of any such Cases or successor cases.

15.    Notwithstanding paragraph 14 of this Second Interim Order, parties-in-interest in these cases shall be permitted to challenge the Debtors' Stipulations up to and including the day that is 45 days after entry of this Second Interim Order, provided that any statutory committee appointed in these cases shall have until 45 days after appointment of such statutory committee to challenge the Debtors' Stipulations (the "Challenge Deadline").   After the Challenge Deadline, any challenge to the Debtors' Stipulations by any party-in-interest, including any statutory committee, shall be forever barred and enjoined.   For purposes of this order, to "challenge the Debtors' Stipulations" shall include, without limitation, any of the following: (i) any defenses, offsets, demands or counterclaims relating to the Prepetition Loan Obligations, the CMB Loan Documents, or to the validity, priority or perfection of the Prepetition Liens, (ii) any claim or cause of action by or on behalf of the Debtors, Debtors-in-Possession, or the Debtors' estates against CMB; (iii) any attempt to disallow, subordinate, avoid, or recharacterize any of the Prepetition Loan Obligations or Prepetition Liens; (iv) any avoidance or similar action

11

against CMB pursuant to the Bankruptcy Code or other applicable non-bankruptcy law.  CMB

may, in its sole and absolute discretion and as evidenced by its explicit written consent, agree to

extend the Challenge Deadline, and any such agreed extension may be limited in duration, scope

or otherwise.  To the extent any challenge referred to in this paragraph  is timely asserted in an

adversary proceeding or contested matter as set forth above, the Debtors' Stipulations shall

nonetheless remain binding and preclusive in these Cases or in any successor cases from and

after the Challenge Deadline, except to the extent that such Debtors' Stipulations were expressly

challenged in such adversary proceeding or contested matter.  Nothing in this Second Interim

Order vests or confers on any person or entity standing or authority to pursue any cause of action

belonging to the Debtors or their estates, including any claim against CMB, and CMB reserves

all rights to challenge and object to such standing or authority.

      16.     Unless otherwise expressly provided in any subsequent order of the Court, CMB

shall not be required to file any proof of claim with respect to any of the prepetition CMB

Facility Obligations or any obligations hereunder or under the First Interim Order, or postpetition

obligations under the CMB Loan Documents, all of which shall be due and payable in

accordance with the terms of CMB Loan Documents without the necessity of filing any such

proof of claim, and the failure to file any such proof of claim shall not affect the validity or

enforceability of any of the CMB Loan Documents, the First Interim Order, this Second Interim

Order, or any other obligations hereunder or thereunder, or prejudice or otherwise adversely

affect the rights, remedies, powers, or privileges of CMB under the applicable CMB Loan

Documents, the First Interim Order, or this Second Interim Order, provided that, for the

avoidance of doubt, the filing any proof of claim by CMB shall not in any way prejudice or

otherwise adversely affect CMB's rights, remedies, powers, or privileges under the CMB Loan

HOU:3537460.6

Documents, the Interim Order, or this Second Interim Order, and <u>provided further</u> that nothing herein shall obviate the need for CMB and the Debtors to work together in good faith to reconcile any such amounts due and owing.

17.     The automatic stay imposed pursuant to Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of this Second Interim Order as necessary to (i) permit the Debtors to grant the Adequate Protection Replacement Liens and to incur all liabilities and obligations to CMB  under this Second Interim Order and (ii) otherwise to the extent necessary to implement and effectuate the provisions of this Second Interim Order.

18.     As a further condition of CMB's consent to the Debtors' use of the Prepetition Collateral, including, without limitation, the Cash Collateral and CMB Vessels, no costs or expenses of administration of the Cases or any successor cases (including, without limitation, any costs or expenses of preserving or disposing of the Prepetition Collateral), shall be charged against or recovered from or against CMB, the Adequate Protection Collateral, the Prepetition Collateral, or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of CMB, and no such consent shall be implied from any other action, inaction, or acquiescence of CMB.  The Debtors' professionals waive any rights pursuant to section 506(c) of the Bankruptcy Code or otherwise to charge any professional fees against or recover from or against any or all of CMB, the Adequate Protection Collateral, the Prepetition Collateral and the Cash Collateral except to the extent their retainers constitute Cash Collateral.

19.     Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

13

20.     This Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

### Reservation of Right

21.     Nothing in this Order shall prejudice any objections CMB may have to the relief requested at the Final Hearing and all such objections are specifically preserved.

### Final Hearing

22.     Pursuant to Bankruptcy Rule 4001, the final hearing (the "Final Hearing") on the Motion shall be held and is hereby scheduled for ~~Mar 27~~, 2015, at 9 :15 __.m. before this Court. Objections to the requested relief shall be filed with the Court no later than ~~Mar 27~~, 2015 at 5 : 00 p.m. and served upon (i) the Debtors; (ii) the Debtors' counsel; (ii) the United States Trustee; (iii) CMB; (iv) CMB's counsel; (v) all secured creditors of the Debtors; and (vi) any other party that has filed a notice of appearance in these chapter 11 cases.  The Debtors shall promptly mail copies of this Order to each of the parties receiving notice of the Motion, as well as any other entity known to the Debtors that might have an interest in the Cash Collateral and any other party that has filed and served a special request for notice with this Court.

March 26, 2015.

Davis R. Jones
United States Bankruptcy Judge

14

Exhibit A

## Winland Ocean Shipping Corp. (Texas)
### Assume Only One Ship ("Fon Tai") is Operating
Projected Cash Receipts and Disbursements For the period March 2015 through May 2015

| Week Ending | ACTUAL WEEK 1 March 8, 2015 | ACTUAL WEEK 2 March 15, 2015 | ACTUAL WEEK 3 March 22, 2015 | WEEK 4 March 29, 2015 | WEEK 5 April 5, 2015 | WEEK 6 April 12, 2015 | WEEK 7 April 19, 2015 | WEEK 8 April 26, 2015 | WEEK 9 May 3, 2015 | WEEK 10 May 10, 2015 | WEEK 11 May 17, 2015 | WEEK 12 May 24, 2015 | WEEK 13 May 31, 2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash Receipts:** | | | | | | | | | | | | | | |
| A. Sales/cash receipts | | $78,265 | | | | $97,500 | | $97,500 | | $110,000 | | $110,000 | | $493,265 |
| Sales tax | | | | | | | | | | | | | | |
| Net sales | $0 | $78,265 | $0 | $0 | $0 | $97,500 | $0 | $97,500 | $0 | $110,000 | $0 | $110,000 | $0 | $493,265 |
| **Gross profit** | $0 | $78,265 | $0 | $0 | $0 | $97,500 | $0 | $97,500 | $0 | $110,000 | $0 | $110,000 | $0 | $493,265 |
| **Operating Expenses** | | | | | | | | | | | | | | |
| Salary of Company's Staff | | | $21,000 | | | | | $20,000 | | $65,000 | | | | $106,000 |
| Rent, Office, Communication, Business Trips | | | $15,000 | | | | | $15,000 | | $30,000 | | $30,000 | | $90,000 |
| Miscellaneous | | | $239 | $1,000 | | $1,000 | | | | $2,000 | | | | $4,239 |
| B. **Management Company Fees:** | | | | | | | | | | | | | | |
| Spare Parts | | | | $0 | | | | $3,000 | | | | $6,000 | | $9,000 |
| Stores & Supplies | | | | $0 | | | | $0 | | | | $2,500 | | $2,500 |
| Repairs & Maintenance | | | | $11,000 | | | | $0 | | | | $1,000 | | $12,000 |
| Docking Expenses | | | | $0 | | | | $0 | | | | $0 | | $0 |
| Survey | | | | $15,600 | | | | $0 | | | | $1,583 | | $17,183 |
| Communication & Equip Repairs | | | | $500 | | | | $0 | | | | $1,000 | | $1,500 |
| Lubricating Oil Charges[1] | | | | $500 | | | | $10,000 | | | | $14,000 | | $24,500 |
| Chart/Publication | | | | $500 | | | | $450 | | | | $450 | | $1,400 |
| ISM/ISPS Audit | | | | $0 | | | | $0 | | | | $0 | | $0 |
| Crew Department | | | | | | | | $24,779 | | | | | | $24,779 |
| Management Fee | | | | | | | | $0 | | | | $5,000 | | $5,000 |
| Commercial and Insurance Department | | | | | | | | $12,900 | | | | $14,800 | | $38,200 |
| **Total Operating Expenses** | $0 | $0 | $36,239 | $28,600 | $0 | $12,000 | $0 | $86,129 | $0 | $97,000 | $0 | $76,333 | $0 | $336,301 |
| D. **Pre-Petition Expenses[B]** | | | | | | | | | | | | | | |
| Crew Department | | $95,742 | | | | $89,000 | | $4,221 | | | | $46,000 | | $234,963 |
| Company Staff Salary | | | | | $1,000 | | | | | | | | | |
| **Total Pre-Petition Expenses** | $0 | $95,742 | $0 | $0 | $0 | $89,000 | $0 | $4,221 | $0 | $0 | $0 | $46,000 | $0 | $234,963 |
| **Reorganization Expenses** | | | | | | | | | | | | | | |
| Professional Fees | | | | | | | | | | | | | | $0 |
| US Trustee Fees | | | | | | | | | | | | | | $10,000 |
| Other Restructuring Expenses | | | | | | | | | | | | | | $0 |
| Critical Vendors | | | | | | | | | | | | | | $0 |

3/25/2015

| Week Ending | ACTUAL WEEK 1 March 8, 2015 | ACTUAL WEEK 2 March 15, 2015 | ACTUAL WEEK 3 March 22, 2015 | WEEK 4 March 29, 2015 | WEEK 5 April 5, 2015 | WEEK 6 April 12, 2015 | WEEK 7 April 19, 2015 | WEEK 8 April 26, 2015 | WEEK 9 May 3, 2015 | WEEK 10 May 10, 2015 | WEEK 11 May 17, 2015 | WEEK 12 May 24, 2015 | WEEK 13 May 31, 2015 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Reorganization Expense | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $1,200 |
| | | | | | | | | | | | | | | |
| Change in cash | $0 | ($17,477) | ($36,239) | ($28,600) | ($1,000) | ($3,500) | $0 | $0 | $0 | $13,000 | $0 | ($12,333) | $0 | ($578,599) |
| | | | | | | | | | | | | | | |
| Beginning Cash | $88,732 | $88,732 | $71,256 | $35,016 | $6,416 | $5,416 | $1,916 | $1,916 | $9,066 | $9,066 | $22,066 | $22,066 | $9,733 | $887,732 |
| Change in Cash | $0 | ($17,477) | ($36,239) | ($28,600) | ($1,000) | ($3,500) | $1,916 | $7,150 | $9,066 | $13,000 | $22,066 | ($12,333) | $9,733 | ($78,999) |
| Ending Cash | $88,732 | $71,256 | $35,016 | $6,416 | $5,416 | $1,916 | $1,916 | $9,066 | $9,066 | $22,066 | $22,066 | $9,733 | $9,733 | $9,733 |

| Post-Petition Debts[E] | Mar-15 | Apr-15 | May-15 |
|---|---|---|---|
| Salary of Company's Staff | $40,000 | $85,000 | $85,000 |
| Office Expenses | $15,000 | $30,000 | $0 |
| Office Personal Insurance | $7,090 | $14,060 | $21,090 |
| Crew Department | $71,000 | $92,221 | $138,221 |
| Total | $133,090 | $221,281 | $244,311 |

**Footnotes**

A. Projected Cash Receipts: Sales from the company's shipping business are generated by either voyage charters or time charters.
The company is currently operating under the assumption that MV Fon Tai will only be generating revenue from time charters. For time charters,
the customer pays for all the fuel expenses and port charges.
Note that the project revenues are based on the following daily time charter rates:

March: $5,500
April: $6,500
May: $7,200
June: $8,000
July: $9,000

Monthly cash receipts are calculated based on 30 days multiplied by the daily time charter rate. The customer pays the company every 15 days so payment is received every other week.

B. Projected Expenses: Operating expenses are estimated by Dalian Well Master Shipping Co (DWMS). DWMS is a company Winland Ocean Shipping has contracted to manage the vessel operations. Winland Ocean Shipping is required to work with a shipping management company in order to operate its vessels. DWMS provides crew personnel, maintenance on vessels, and other expert operational services to ensure smooth vessel operations. DWMS sends Winland Ocean invoices for its operating expenses and also charges a management fee.

C. Per Winland Ocean Shipping management, the Company currently has oil reserves that can cover the lubrication expenses up until the beginning of April 2015.

D. These are pre-petition expenses that need to be court approved.

E. The monthly amounts for post-petition debts show how the total ending balance of post-petition debts for that particular month.

2677-002#0K1NEX#Tfinal 2nd interim cash collateral budget