IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| In re: § | Chapter 11 | |
| § | | |
| **WINLAND OCEAN SHIPPING** § | | |
| **CORP**, *et al.*,[1] § | Case No. 15-60007 (DRJ) | |
| § | | |
| Debtors. § | (Jointly Administered) | |

**DEBTOR'S RESPONSE AND OBJECTION TO MOTION OF CHINA
MERCHANTS BANK CO., LTD. PURSUANT TO 11 U.S.C. § 362(d) FOR
ENTRY OF ORDER GRANTING RELIEF FROM AUTOMATIC STAY**
[Relates to Docket # 51]

The Debtors, hereby file this Response and Objection ("Response") to Motion of China Merchants Bank Co., Ltd. Pursuant to 11 U.S.C. § 362(d) for Entry of Order Granting relief from Automatic Stay ("Motion") and in support hereof, respectfully state as follows:

## I.  RESPONSE

1.  The Debtors admit that by a certain facility agreement dated March 26, 2010 (together with all amendments and supplements to it, the "CMB Facility"), made by and among CMB, as lender, Fon Tai and Won Lee, as joint and several borrowers, SkyAce, as corporate guarantor, CMB made available to Fon Tai and Won Lee a secured loan facility of $37 million for the finance and construction of M.V. Fon Tai and M.V. Rui Lee (the "CMB Vessels"). The Debtors further admit that the CMB Facility is secured by mortgages against the CMB Vessels and a security interest against the CMB Vessels' earnings. The remaining allegations contained in paragraph 1 of the Motion are denied.

---

[1] The Debtors in these chapter 11 cases are: (1) Winland Ocean Shipping Corporation ("Winland"); (2) SkyAce Group Limited (BVI) ("SkyAce"); (3) Plentimillion Group Limited (BVI) ("Plentimillion"); (4) Fon Tai Shipping Co. Ltd. (HK) ("Fon Tai"); (5) Winland Dalian Shipping S.A. (Panama) ("Winland Dalian"); and (6) Won Lee Shipping Co. Ltd. (HK) ("Won Lee").

2. The Debtors admit that they are not currently making periodic cash payments to CMB, but deny the remaining allegations contained in paragraph 2 of the Motion.

3. The Debtors admit that the sum total value of all liens against the CMB Vessels is likely greater than the value of the CMB Vessels, but deny the remaining allegations contained in paragraph 3 of the Motion.

4. Paragraph 4 of the Motion contains no allegations to which the Debtors are required to respond.

5. The Debtors admit the allegations contained in paragraph 5 of the Motion.

6. On April 7, 2015, the Office of the U.S. Trustee appointed a Committee of Unsecured Creditors in this case. The Debtors admit the remaining the allegations contained in paragraph 6 of the Motion.

7. The Debtors admit the allegations contained in paragraph 7 of the Motion.

8. The Debtors admit the allegations contained in paragraph 8 of the Motion.

9. The Debtors lack information sufficient to form a belief as to the alleged amount owed under the CMB Facility and, therefore, deny the allegation that "[t]he amount outstanding as of the Petition Date under the CMB Facility was approximately $28 million." The remaining allegations contained in paragraph 9 are admitted.

10. The Debtors admit the allegations contained in paragraph 10 of the Motion.

11. The Debtors admit that copies of the CMB Facility are in the Debtors' possession. The Debtors neither admit nor deny whether the documents contained in Exhibit B to the Motion are true and correct copies of the same.

12. The Debtors admit the allegations contained in paragraph 12 of the Motion.

13. The Debtors admit the allegations contained in paragraph 13 of the Motion.

14. The Debtors admit the allegations contained in paragraph 14 of the Motion.

15. The Debtors deny the allegations contained in paragraph 15 of the Motion.

16. The Debtors admit that the M.V. Rui Lee and the M.V. Winland Dalian were arrested prepetition. The Debtors further admit that M.V. Fon Tai remains in operation.

17. The Debtors admit that on or about September 9, 2014, Charterer Milestone Shipping S.A. ("Milstone") arrested the M.V. Rui Lee alleging claims for breach of contract, breach of duty, negligence and tort claims. The Debtors further admit that Milestone released the M.V Rui Lee from arrest on or about October 27, 2014. The remaining allegations contained in paragraph 17 of the Motion are denied.

18. To the extent that CMB alleges that it has complied with the automatic stay, such allegation is denied. The remaining allegations contained paragraph 18 of the Motion are admitted.

19. The Debtors lack information sufficient to form a belief as to the allegations contained in paragraph 19 of the Motion. Accordingly, such allegations are denied.

20. The Debtors lack information sufficient to form a belief as to the allegations contained in paragraph 20 of the Motion. Accordingly, such allegations are denied.

21. The Debtors admit that the M.V. Fon Tai remains in operation. The remaining allegations contained in paragraph 21 are neither admitted nor denied. The referenced documents speak for themselves.

22. The Debtors lack information sufficient to form a belief as to the amount of CMB's alleged claim and, therefore, the allegation that CMB's claims exceed $28 million is denied. The Debtors deny the remaining allegations contained in paragraph 22 of the Motion.

23. The Debtors neither admit nor deny the allegation in the Motion regarding the content of the "Clarkson Shipping Intelligence Weekly dated January 16, 2015." The document, although not attached to the Motion, speaks for itself, and is hearsay. The remaining allegations contained in paragraph 23 of the Motion are denied.

24. Paragraph 24 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 24 of the Motion contains factual allegations, Debtors deny all such factual allegations.

25. Paragraph 25 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 25 of the Motion contains factual allegations, Debtors deny all such factual allegations.

26. The Debtors lack information sufficient to form a belief as to the alleged amount owed under the CMB Facility and, therefore, deny the allegation that "[t]he aggregate amount of CMB Facility Obligations as of the Petition Date was approximately $28 million." Paragraph 26 of the Motion further contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 26 of the Motion contains additional factual allegations, Debtors deny all such factual allegations.

27. The Debtors admit that they are not currently making periodic cash payments to CMB and that M.V. Fon Tai remains in operation, but deny the remaining allegations contained in paragraph 27 of the Motion.

28. The Debtors lack information sufficient to form a belief regarding the quarterly amount of debt service to CMB. Accordingly, such allegations are denied. The Debtors deny the remaining allegations contained in paragraph 28.

29. Paragraph 29 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 29 of the Motion contains factual allegations, Debtors deny all such factual allegations.

30. The Debtors deny the allegations contained in paragraph 30 of the Motion.

31. Paragraph 31 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 31 of the Motion contains factual allegations, Debtors deny all such factual allegations.

32. The Debtors admit that each of its vessels are encumbered by liens.

33. Paragraph 33 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 33 of the Motion contains factual allegations, Debtors deny all such factual allegations.

34. Paragraph 34 of the Motion contains a recitation of law that Debtors need not admit or deny.

35. Paragraph 35 of the Motion contains a recitation of law that Debtors need not admit or deny.

36. Paragraph 36 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 36 of the Motion contains factual allegations, Debtors deny all such factual allegations.

37. Paragraph 37 of the Motion contains legal conclusions that Debtors need not admit or deny. To the extent paragraph 37 of the Motion contains factual allegations, Debtors deny all such factual allegations.

38.     Paragraph 38 of the Motion contains legal conclusions that Debtors need not admit or deny.  To the extent paragraph 38 of the Motion contains factual allegations, Debtors deny all such factual allegations.

39.     The Debtors neither admit nor deny allegations regarding "other foreign shipping chapter 11 case."  The Debtors lack personal knowledge of the referenced cases or the results obtained therein.  The remaining allegations of paragraph 39 are denied.

40.     Paragraph 40 of the Motion contains legal conclusions that Debtors need not admit or deny.  To the extent paragraph 40 of the Motion contains factual allegations, Debtors deny all such factual allegations.

41.     The Debtors need not admit or deny paragraph 41 of the Motion.

42.     The conclusion of the Motion contains legal conclusions that Debtors need not admit or deny.  To the extent the conclusion of the Motion contains factual allegations, Debtors deny all such factual allegations.

## II.  OBJECTION AND RESPONSE TO MOTION

43.     CMB moves to lift the stay under both sections 362(d)(1) and (d)(2) of the Bankruptcy Code.  The Motion should be denied because (i) CMB is adequately protected and/or may be adequately protected by the Debtors, and (ii) the CMB Vessels are necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(1) and (d)(2).

**A.     CMB is Adequately Protected**

44.     Initially, CMB seeks relief from the automatic stay pursuant to Bankruptcy Code § 363(d)(1) alleging that the Debtors are unable to adequately protect CMB's interest in the CMB Vessels.  In support of this contention, CMB asserts a number of faulty assumptions.  First, CMB argues that the Debtors are unable to make adequate protection payments in these cases

because only one of the Debtors' three vessels is currently being operated. Given the fact that CMB, in violation of the automatic stay, is maintaining arrest proceedings against the Debtors' vessel, the M.V. Rui Lee, this argument is rather disingenuous. As the Debtors will demonstrate at the hearing on CMB's Motion and the Debtors' concurrently pending request for a preliminary injunction, if the Debtors are allowed to operate **both** the M.V. Rui Lee **and** the M.V. Fon Tai, the Debtors expect to generate revenues sufficient to pay accrued post-petition expenses, pay continuing post-petition expenses as they come due, **and** make periodic adequate protection payments to CMB.

45. Second, CMB argues that the Debtors' equity in the vessels is eroding because "the cost of the arrest of M.V. Rui Lee continues to accrue." Obviously, to the extent this Court finds that CMB's continued arrest of the M.V. Rui Lee is a violation of the automatic stay and orders the turnover of the M.V. Rui Lee, such costs will stop accruing.

46. Further, the Debtors have demanded that CMB cause the release of the M.V. Rui Lee. In violation of the automatic stay, CMB continues to refuse to turn-over the Debtors' property. Now, CMB appears to argue that relief from the automatic stay should be granted because CMB, in violating the automatic stay and refusing to release the M.V. Rui Lee, is incurring costs that it intends to charge against the Debtors. The Debtors should not be liable for costs related to CMB's willful violation of the automatic stay. Ultimately, it would be patently inequitable to allow CMB's willful violation of the automatic stay to serve as "cause" for granting CMB relief from the automatic stay.

47. Finally, CMB argues that cause exist to lift the automatic stay because "[t]he CMB Vessels are undoubtedly worth less than they were in August 2014 . . .." However, on a motion requesting relief from the automatic stay, the moving party must show that the subject

property is declining in value during the imposition of the automatic stay– not that the property value decreased prior to bankruptcy. *See HSH Nordbank AG v. Baytown Navigation, Inc. (In re Baytown Navigation, Inc.)*, 2012 U.S. Dist. LEXIS 46910, at *9 (S.D. Tex. Apr. 2, 2012) ("[T]he secured creditor must show either a decline in value or the threat of a decline in value during the term of the automatic stay by either quantitative or qualitative methods."); *see also In re Geijsel*, 480 B.R. 238, 265 n. 19 (Bankr. N.D. Tex. 2012) ("The purpose of adequate protection payments is to adequately protect creditors from the diminution of value in a creditor's collateral.") (citing *In re Timbers*, 793 F.2d 1380, 1389 (5th Cir. 1986) ("adequate protection . . . [is] intended to protect a secured creditor against a decrease in the value of its collateral due to the debtor's use, sale or lease of that collateral during the stay.")). CMB stops shorts of meeting this critical element – offering no opinion as to whether the CMB Vessels will continue to decline in value during the imposition of the automatic stay – and therefore fails to establish an essential element of its § 362(d)(1) argument. *HSH Nordbank AG*, 2012 U.S. Dist. LEXIS 46910, at *9 ("If the movant fails to meet that burden, the Court will dismiss the motion for relief from stay before the burden shifts to the Debtors, who would otherwise bear the ultimate burden of persuasion under § 362(g)(2)."); *In re Juhasz*, 208 B.R. 32, 36 (Bankr. S.D. Tex. 1995) (denying relief from the automatic stay and refusing to order periodic adequate protection payments).

48. Nevertheless, CMB is adequately protected in this case. As set forth in the Report of Mr. Taotao Yu, attached hereto as **Exhibit A**, the combined value of the CMB Vessels is approximately $31.8 million. According to the Motion, CMB's prepetition claim is approximately $28,037,674.00. Based upon these figures, an equity cushion of approximately $3.8 million is available to protect CMB's interest in the CMB Vessels. Additionally, the

Debtors propose to pay CMB monthly adequate protection payments in the amount of the stated interest rate provided under the CMB Facility.

49. The Debtors submit that the equity cushion plus monthly payments is more than sufficient to adequately protect CMB's interest in the CMB Vessels. *See, e.g. In re McGowan*, 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (secured creditor adequately protected by 10% equity cushion combined with monthly interest payments). Indeed, the equity cushion alone may be sufficient adequate protection. *See, e.g., In re DBI Hous., Inc.*, 2013 Bankr. LEXIS 2146, *10 (Bankr. C.D. Cal. May 22, 2013) (equity cushion of 16% is sufficient); *see also In re Kost*, 102 B.R. 829, 832 (D. Wyo. 1989) ("Case law is divided on whether a cushion of 12% to 20% constitutes adequate protection.") (gathering cases and citing *In re Schaller*, 27 B.R. 959 (W.D. Wisc. 1983) (17% to 18% is insufficient); *In re Hawaiian Pacific Industries*, 17 B.R. 670 (Bankr. D. Ha. 1982) (15% is adequate); *In re Rogers Development Corp.*, 2 B.R. 679 (Bankr. E.D. Va. 1980) (17% is adequate); *In re Pitts*, 2 B.R. 476 (Bankr. C.D. Ca. 1979) (15% is adequate).

50. Accordingly, CMB's motion to lift the automatic stay pursuant to § 363(d)(1) must be denied.

**B.  The CMB Vessels are Necessary to the Debtors' Effective Reorganization**

51. CMB alternatively requests that the stay lift pursuant to § 362(d)(2). Section 362(d)(2) provides that relief from the stay must be granted if (A) the debtor does not have equity in such property; **and** (B) such property is not necessary to an effective reorganization. Here, the Motion must be denied because the CMB Vessels are necessary to the Debtors' ability to effectively reorganize.

52. CMB argues that the CMB Vessels cannot be necessary to an effective reorganization "because no reorganization is possible." Motion, p. 15-16. Other than somewhat-vague, conclusory proclamations and references to other shipping company bankruptcy cases without any actual substantive comparison, CMB does not actually argue that a valid impediment exists as to the Debtors' ability to reorganize.

53. As set forth in the Report of Robert E. Ogle (attached hereto as **Exhibit B**), the Debtors maintain that reorganization is possible if the Debtors are allowed to operate both the M.V. Fon Tai **and** the M.V. Rui Lee. While the Debtors acknowledge that to prevail over CMB's lift stay motion, the Debtors "need do more than manifest unsubstantiated hopes for a successful reorganization" (*In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir. 1991)), the Debtors note that this case is still somewhat in its infancy and that the Debtors should be granted sufficient breathing room to formulate a plan. *See, e.g., In re Timbers of Inwood Forest Associates, Ltd.*, 808 F.2d 363, 371 (5th Cir. 1987) (instructing bankruptcy courts to apply "the 'reasonable possibility of successful reorganization' standard with somewhat more indulgence" at the beginning of a case).

54. Indeed, in this case, one of the primary impediments to the Debtors' ability to formulate a plan of reorganization is the fact that CMB has arrested the M.V. Rui Lee. As set forth in the Ogle Report, with two ships operating and an infusion of additional operating capital (either via DIP financing or equity investment), the Debtors will be able to meet their post-petition debts as they accrue, pay down accrued post-petition expenses, and make periodic adequate protection payments to CMB. At this point, however, while the majority of the Debtors' income-producing assets are being withheld from the Debtor, pursuing additional capital options is futile.

55. Under such circumstances, notwithstanding any concerns that the Court may have regarding the Debtors' ultimate ability to confirm a plan, the Court should deny CMB's Motion and give the Debtors adequate time formulate a plan of reorganization after the return of the M.V. Rui Lee. *See In re EQK Bridgeview Plaza, Inc.*, 2011 Bankr. LEXIS 2431, 14 (Bankr. N.D. Tex. June 16, 2011) (denying creditors lift stay motion despite expressing "grave concerns" as to whether the Debtor would be able to confirm a plan).

### III. CONCLUSION

56. In sum, CMB is adequately protected by a sufficient equity cushion and the Debtors' proposal to provide periodic interest payments. Further, evaluating the Debtors' ability to reorganize at this point (while the Debtors are not able to operate the M.V. Rui Lee) is flawed, because CMB maintains possession of one of the Debtors' primary income-producing assets. If the Debtors are able to operate both the M.V. Fon Tai and the M.V. Rui Lee, the Debtors expect to generate sufficient revenue to meet their post-petition debts as they accrue, pay down accrued post-petition expenses, and make periodic adequate protection payments to CMB. As CMB is adequately protected from any potential (although unproven) decline in value of the CMB Vessels, the Debtors should be granted such opportunity. CMB's Motion requesting relief from the stay should be denied.

WHEREFORE, the Debtors request that this Court enter an order denying the Motion, and such other and further relief as may be just and proper under the circumstances.

DATED: May 4, 2015.

**OKIN & ADAMS LLP**

By: /s/ *Matthew S. Okin*
 Matthew S. Okin
 Texas Bar No. 00784695
 Email: mokin@okinadams.com
 George Y. Niño
 Texas Bar No. 00786456
 Email: gnino@okinadams.com
 David L. Curry, Jr.
 Texas  Bar No. 24065107
 Email: dcurry@okinadams.com
 1113 Vine St. Suite 201
 Houston, TX  77002
 Tel: (713) 228-4100
 Fax: (888) 865-2118

**ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 4, 2015, the forgoing instrument was served upon counsel for China Merchants Bank Co., Ltd. via the Courts electronic filing/noticing system (ECF).

By: /s/ *David L. Curry, Jr.*
 David L. Curry, Jr.